THE STATE ex rel. KANSAS CITY MISSOURI NAVIGATION COMPANY et al. v. SAMUEL A. DEW, Judge of Circuit Court, et al.

In Banc, December 30, 1925.

1. **DEPARTURE: Second Amended Petition: After Demurrer to First Amended Petition: Jurisdiction.** Where plaintiff has abandoned his original petition by filing a first amended petition, to which a demurrer, filed by defendants without in any wise limiting their appearance, has been sustained, it is of no consequence whether his first amended petition stated an entirely different cause of action from that set forth in his original petition; but where defendants have filed a motion to strike out the second amended petition on the ground of departure, the only question then arising is whether the second amended petition states a different cause of action from that stated in the first amended pleading. Even if the first amended pleading stated an entirely different cause of action from that stated in the original—was in fact the institution of a new lawsuit—the defendants by voluntarily appearing thereto submitted themselves, so far as their persons were concerned, to the jurisdiction of the court.

2. **PLEADING: Corporation: Dissolution: Redress of Grievances: Breach of Trust: Jurisdiction.** A court of equity is without jurisdiction, in any extreme case put to it, to dissolve a corporation and make distribution of its assets, and if the bill is framed for

State ex rel. Navigation Co. v. Dew.

the primary purpose of effecting its dissolution, or what is tantamount thereto, a winding up of its affairs and the distribution of its assets, a court of equity does not have jurisdiction of the action. But, on the other hand, a bill which, as its principal objective, seeks redress on behalf of the corporation for the fraud, *ultra vires* acts or negligence of its officers and directors, amounting to a breach of trust, deals with matters which fall well within the established jurisdiction of a court of equity.

3. ————: Considered as a Whole: Prayer: Corporation: Dissolution: Receivership: Breach of Trust: Accounting. It is not allowable to take from the body of a bill a paragraph here, a sentence there, separate them from their context and bring them into a new combination, for the purpose of determining its character; and while the bill set out in full in the opinion, if certain averments are selected, and the remainder rejected as surplusage and the prayer ignored, could be interpreted to be a bill which has for its primary objective a redress of grievances on behalf of a corporation for the frauds, *ultra vires* acts and negligence of its officers and directors, amounting to a breach of trust, yet when considered as a whole, together with its prayer, it is manifest that it is a bill which has for its purpose the appointment of a receiver, the taking of an account between the shareholders of a corporation and a distribution of its assets in accordance therewith, and that all other matters with which it deals are intended to be purely incidental to such main purpose, and a court of equity therefore had no jurisdiction to entertain it.

4. ————: Amendment: Jurisdiction. A circuit court as a court of equity has no power to wind up the affairs and distribute the assets of a corporation, nor is such power conferred upon it by the statute (Secs. 10169 to 10171, R. S. 1919); and being wholly without jurisdiction of the subject-matter, it cannot allow an amendment of a bill whose primary object is the dissolution of the corporation, for to do so would be to exercise a jurisdiction it does not possess, but being without jurisdiction of the subject-matter it can do nothing further than to dismiss the proceeding.

Corporations, 14a C. J., Section 1933, p. 155, n. 79; Section 3679, p. 1087, n. 17; p. 1088, n. 21, 22. Equity, 21 C. J., Section 425, p. 405, n. 80; Section 625, p. 525, n. 43. Pleading, 31 Cyc., p. 83, n. 16; p. 465, n. 16.

## Prohibition.

PRELIMINARY RULE MADE ABSOLUTE.

*Miller, Winger & Reeder* and *Reed, Boyle, Holmes & Taylor* for relators; *James A. Reed, Massey Holmes, Maurice H. Winger, P. E. Reeder* and *Leland Hazard* of counsel.

(1)   The circuit court had no jurisdiction over the subject-matter of this action.  Bick v. Vaughn, 140 Mo. App. 595; Knight v. Ry. Co., 120 Mo. App. 311; Rush v. Brown, 101 Mo. 587; Howard v. Wilson, 195 Mo. App. 532; Aiple-Hemmelmann Real Estate Co. v. Louis Spellbrink, 211 Mo. 671; Bick v. Dickson, 148 Mo. App. 703; Witherbee v. Bowles, 201 N. Y. 427; Ashton v. Penfield, 233 Mo. 391; Dorrah v. Pemiscot County Bank, 256 S. W. 560; Suggett v. Pemiscot County Bank, 256 S. W. 565; Hearst v. Putnam Mining Co., 28 Utah, 184, 66 L. R. A. 784.   (2)   There being no jurisdiction in the circuit court of the action exhibited by the original bill in equity, no amendment thereof was possible to confer jurisdiction.   15 C. J. 854; State ex rel. v. McQuillin, 256 Mo. 693; Goodwin v. Barnett, 28 N. E. (Ind.) 115; Norton v. Hannibal & St. Joseph Railroad Co., 48 Mo. 387; Elfrank v. Seiler, 54 Mo. 134.   (3) . The action of the circuit court subsequent to the entire lack of jurisdiction being called to its attention was and is a usurpation of jurisdiction requiring this court's intervention by its writ of prohibition; and such lack of jurisdiction of the subject-matter could not be waived by, nor even conferred by express consent of, the defendants.   Briggs v. Traders Company, 145 Fed. 254; Barcus v. Gates, 89 Fed. 783; Grymes v. Mill & Lumber Company, 111 Mo. App. 358; Scoville v. Glasner, 79 Mo. 449; State ex rel. v. Eby, 170 Mo. 497; Brown v. Woody, 64 Mo. 547; Abernathy v. Moore, 83 Mo. 65; United States v. Mayer, 235 U. S. 55, 59 L. Ed. 129.

*E. C. Hamilton, A. R. McClanahan* and *Clarence A. Burney* for respondents.

(1)   The circuit court, against which the preliminary rule in prohibition has issued, is vested with juris-

diction to hear and determine the cause submitted in the original bill, and in the first amended bill. Secs. 10169, 10170, 10171, R. S. 1919; Slattery v. Transfer Co., 91 Mo. 217; Buford v. Packet Co., 3 Mo. App. 159; Hannerty v. Standard Theater Co., 109 Mo. 299; State ex rel. v. Reynolds, 275 Mo. 113; Bates v. Werries, 198 Mo. App. 209; Ward v. National Ice Cream Co., 246 S. W. 557; Van Oss v. Petroleum Co., 93 Atl. 76; Riley v. Callahan Mining Co., 155 Pac. 671; Cantwell v. Lead Co., 199 Mo. 1. (2) Even though a court of equity is without power to grant all the relief prayed for (including distribution of assets), yet the prayer does not determine the jurisdiction, and the court will look to the whole petition and grant any relief consistent with the facts pleaded and embraced within the general prayer for relief. Liese v. Meyer, 143 Mo. 547; McGlothin v. Moore, 44 Mo. 350; Luenk v. Burch, 90 Mo. 500; Holland v. Anderson, 38 Mo. 58; State ex rel. v. Dearing, 180 Mo. 53; Bick v. Dixon, 148 Mo. App. 703; Ashton v. Penfield, 233 Mo. 319; Cantwell v. Lead Co., 199 Mo. 1; State ex rel. v. Foster, 225 Mo. 171.

RAGLAND, J.—Original proceeding in prohibition. On January 14, 1925, Frank W. McMillan, as plaintiff, filed in the Circuit Court of Jackson County, at Independence, his bill in equity against Kansas City Missouri River Navigation Company, a corporation, and certain individuals designated as directors, as defendants. Thereafter, on March 11, 1925, the defendants filed a general demurrer to the bill. On March 21, 1925, while the demurrer was still pending, the court of its own motion transferred the cause to the Circuit Court of Jackson County at Kansas City. On March 24, 1925, and before the demurrer had been passed upon, plaintiff, by leave of court, filed what is termed his "first amended bill in equity." At this stage of the proceeding three other persons claiming to be the several owners in the aggregate of 450 shares of preferred stock of the corporation were permitted to intervene and become parties plaintiff

and who thereupon adopted the pleadings on the part of the plaintiff. At about the same time 427 others claiming to be the owners of 588,900 shares of preferred stock were allowed to become parties defendant. Subsequently the defendants demurred to plaintiffs' amended bill, on the grounds: first, that the court had no jurisdiction of the subject of the action; second, that several causes of action had been improperly united; and, third, that said pleading did not state facts sufficient to constitute a cause of action. The joint and several demurrers of defendants were sustained, and the plaintiff given time to further plead. Thereafter, on May 20, 1925, plaintiffs filed a "second amended bill in equity." This pleading the defendants moved to strike from the files on the ground: "that the cause of action set up in said second amended petition or bill in equity is separate, distinct and different from the cause of action heretofore set up by plaintiffs in this action, and for the reason that said second amended petition constitutes a departure." The motion to strike was overruled by the court. Thereupon the defendants applied to this court for a writ to stay further proceedings, on the ground that the circuit court was without jurisdiction of the subject of the action, and our provisional rule in prohibition issued.

It is relators' contention that the original bill and the first amended bill each had for its objective the dissolution and winding up of the affairs of the Kansas City Missouri River Navigation Company, while respondents insist that the action as disclosed by said pleadings is for an accounting at the hands of the officers and directors of that corporation. For the purpose of determining the nature of the action the original bill may be excluded from consideration. This because it was abandoned by plaintiff McMillan, when he filed his first amended bill, and thereafter defendants without in any way limiting their appearance pleaded to the first amended bill. So that even if the latter pleading stated an entirely different cause of action from that set forth in the original, was in fact the institution of a new lawsuit, the defendants

by voluntarily appearing thereto submitted themselves, so far as their persons were concerned, to the jurisdiction of the court. We agree with respondents' statement of the issue thus:

"At the threshold of this case we are met with the consideration of this one important question which is determinative of the right to the peremptory writ: 'Is the case stated in respondent McMillan's first amended bill one over which the general jurisdiction of the circuit court extends?' If this question can be answered in the affirmative, then all else is beside the case and the preliminary rule should be dissolved. If the answer is in the negative then of course the preliminary rule should be absolute."

The pleading in question is voluminous, but as so little space could be saved by an attempted analysis of it we prefer to let it speak for itself. Omitting small portions which are merely repetitions, it is as follows:

"1. Your petitioner, having first obtained leave of court, files this, his first amended bill in equity, and states that he is a stockholder in the Kansas City Missouri River Navigation Company, being a bona-fide owner and holder of seventeen hundred shares of the preferred stock of said corporation, and that as such stockholder this action is brought for and on behalf of himself and other stockholders similarly situated who may desire to participate as plaintiff in this action.

"Plaintiff further states to the court that said Kansas City Missouri River Navigation Company is a corporation duly organized and existing under the laws of the State of Missouri, having been organized in the year 1909 with a capital stock of two thousand shares of the par value of one dollar per share; that the original stockholders of said corporation, together with their holdings, at the date of said incorporation were as follows:

W. R. Nelson .................... 154 shares
J. F. Richards ................. 154 shares
W. S. Dickey ................... 154 shares
L. M. Jones .................... 154 shares
Leon Smith .................... 154 shares

312 Mo. Sup.—20.

R. A. Long .................... 154 shares
A. W. Mackie ................. 154 shares
W. M. Volker ................. 154 shares
Chas. Campbell .............. 154 shares
J. F. Bird ................... 154 shares
J. J. Heim ................... 154 shares
Thos. H. Swope ............. 154 shares
Joseph S. Loose ............ . 152 shares

"That all of said two thousand shares were common stock issued to the above parties, and that the thirteen parties above named were designated and chosen as directors for the first year; that the purpose for which said corporation was formed, as stated in the articles, was as follows:

"'The purposes for which this corporation is formed are to navigate, improve and cause to be improved, the Missouri River and the inland waterways of the United States; to develop the natural resources of the land and country bordering on and contiguous thereto, and to convey and transport persons and freight on land or water by any mode or conveyance whatever, and to do all things lawful and needful to carry out the purposes herein stated.'

"2. Your petitioner further represents to the court that said above-named corporation was organized under the provisions of the statutes of the State of Missouri for 1909, particularly under Article 7 of Chapter 33 of Private Corporations, governing the formation of business and manufacturing corporations; that under and by virtue of the fourth paragraph of the original articles of incorporation it was provided that, in order that the control and management of the corporation might always be exercised by those in sympathy with and friendly to the purpose for which said corporation was formed, any common stockholder that might wish to sell his stock must sell at the par value to other common holders, and must offer to each and all of the said stockholders the privilege of buying such stock before offering the same to any outsider, and it was further provided that the

majority of the common stockholders could force any one of the minority of the common stockholders to sell his or her stock to the majority on certain terms and conditions.

"It was further provided in said articles that the term for which this corporation should exist was fifty (50) years.

"3.   Your petitioner further represents that thereafter, to-wit, on January 16, 1912, a meeting of all, or a majority of all, the stockholders of said corporation was held for the purpose of increasing the capitalization, at which said meeting said capital stock was increased by the sum of one million two hundred thousand dollars, and to make the said increase of stock all preferred stock, so that after said increase its entire capitalization was one million two hundred and two thousand dollars, and at said meeting the following resolution was passed:

" 'Said preferred stock shall be entitled, out of any and all surplus net profits, whenever declared by the board of directors, to non-cumulative dividends at the rate of five per cent per annum for each fiscal year after such stock has been issued, payable in priority to the dividends on any common stock for said fiscal year, the common stock subject to the prior rights of the holders of the preferred stock shall receive an annual dividend of five per cent and the dividends in excess of such amounts shall be declared equal on all shares of the corporation both common and preferred.   The voting power of the corporation shall vest solely in and with the common stock and the holders of the common stock shall elect thirteen directors in manner and form as provided by the laws of Missouri, who shall manage and control the affairs of the said corporation.   The preferred stock shall have no priority over the common stock out of the assets of the corporation in case of its dissolution or liquidation.'

"The above resolution was passed by the unanimous vote of all officers and stockholders present.

"4. Your petitioner further represents to the court that the amount of assets reported after said increased capitalization was $769,932.49; the amount of liabilities given were $965.05. That after said capitalization before mentioned the said corporation sold said preferred stock to various persons, not all of whose names are to your petitioner known, and that said purchasers paid to said corporation the sum of $1,013,498.27, leaving unpaid subscriptions to the amount of $188,501.73, which said last-named sum, as your petitioner is informed and believes and so charges to be the fact, is still due and unpaid, but your petitioner does not know how many of the stockholders are still owing for said subscriptions.

"That after said capital stock was increased, as above stated, the said corporation, through its duly constituted officials, purchased boats and equipment presumably for the purpose of transporting persons and freight for hire upon the Missouri River and the Mississippi River, and that for a brief period said corporation ostensibly attempted the business of transporting freight and passengers for hire on the Missouri River and elsewhere.

"5. Your petitioner further represents that during the year 1918 the said officers of said corporation sold all boats and equipment owned by the said corporation and retired from the business of transporting freight and passengers for hire, and that the proceeds, or a portion thereof, derived from the sale aforesaid were by them invested in United States Liberty Bonds. That since the date of the sale aforesaid, said defendant corporation has not been engaged in any way, shape or form in carrying out the purposes of its organization according to the terms and provisions of its charter, and that it is not now engaged in navigating or improving the Missouri River or any other waterway of the United States, and has not been engaged in conveying or transporting persons or freight on land or water by any mode of conveyance whatever since the year 1918, nor has said corporation engaged or attempted to engage in any business

or enterprise within the purview of its charter since said last-named date.

"6. Your petitioner represents to the court that the amount invested in Liberty Bonds by this corporation, through its officers and board of directors, according to their representations, was $666,717.19, and that according to the financial statement of defendant corporation which was rendered on or about February, 1925, the said defendant corporation made the following report of assets and liabilities:

"ASSETS.

"Cash ............................................$ 31,861.92
Liberty Bonds (cost) par value $726,400 .............. 666,717.19
Accounts receivable .............................. 1,184.30
Furniture and Fixtures ............................ 164.00
Accrued interest and bonds ........................ 8,915.60
Accrued interest on stock subscriptions ............. 44,025.07

                                                   $752,868.09

"LIABILITIES.

"Capital Stock:
    Common ........................................$  2,000.00
    Preferred ...................$1,200,000.00
    Less unpaid installments ......  188,501.73

  . Preferred stock balance ........................ 1,011,498.27
"Reserves for freight adjustment ................... 271.61
Deficit as of December 21, 1923 .................... 283,014.96
Net income January 1, 1924 to December 31, 1924 .... 22,113.17
Net deficit ....................................... 260,901.79
Net liabilities ' .................................. 752,868.09

"7. Your petitioner further represents to the court that the defendant officers and directors of said defendant corporation have violated and neglected their duties as such and have been guilty of gross mismanagement and maladministration in the business affairs of said corporation, all to the great loss and damage of your petitioner and other stockholders similarly situated. That said neglect and violation of duty and said mismanagement and maladministration consists in this, to-wit:

"(a) That said defendant officers and directors have sold and disposed of all the physical assets and

properties of said corporation needful and necessary to the carrying on of its business except a small portion thereof indicated in the foregoing statement and denominated 'furniture and fixtures of the estimated value of $164,' so that the physical properties by which alone said corporation could function within the purview of the terms of its charter and for the purpose for which it was incorporated, are no longer within its possession or control.

"(b) That said defendant officers and directors of said corporation have diverted and misappropriated the funds derived from the sale of the property aforesaid and are now using the same, and have been using the same, for a period of more than seven years for purposes foreign to those for which they were incorporated and to their own benefit as hereinafter alleged. That said wrongful diversion and misappropriation of funds were contrary to the provisions of its charter; contrary to Section 9749, Revised Statutes of Missouri of 1919; contrary to Section 7, Article 12, of the Constitution of Missouri, and that the acts of said board of directors in thus diverting and misappropriating said funds were *ultra vires* and amounting to an unlawful use of the assets of said corporation, to the prejudice of this petitioner and all other shareholders similarly situated.

"(c) That said defendant officers and directors have failed and refused to distribute the assets of said corporation *pro rata* to its respective shareholders, although it has ceased to function under the provisions of its charter, abandoned its franchise, and has ceased to transact any business whatever for a period of more than seven years.

"(d) That the above-named defendant directors of Kansas City Missouri River Navigation Company, F. G. Crowell, F. D. Crabbs, W. S. Dickey, J. J. Heim, R. A. Long and A. W. Peet, are likewise directors and stockholders in the Commerce Trust Company, a corporation, organized under the laws of the State of Missouri and engaged in a general banking business in the city of Kan-

sas City, Missouri, and that because of the dual capacity
in which said defendant directors have been and are now
acting, they have for a long period of years neglected and
mismanaged the affairs of the Kansas City Missouri
River Navigation Company, and allowed the said com-
pany to become defunct and inoperative, and used the
funds and assets thereof to promote the interests of the
said Commerce Trust Company and the interests of the
defendants.   .   .   .

"That after the sale of the properties of the Kansas
City Missouri River Navigation Company, the funds de-
rived therefrom were by the president and treasurer of
said Navigation Company, Walter S. Dickey, loaned to
the said Southwest National Bank of Commerce, and later
to its successor, the Commerce Trust Company, and have
been through a long period of years used in such man-
ner to promote the interests of the said banks and the
personal interests of these defendants.   That the said
Walter S. Dickey loaned said bonds constituting prac-
tically the entire assets of the Kansas City Missouri
River Navigation Company without any authority, con-
trary to law and in gross abuse and violation of the trust
reposed in him as such officer of said Navigation Com-
pany.   That he took in return for said loan no security
whatever and that during a long period of years the said
Southwest National Bank of Commerce and said Com-
merce Trust Company have used and pledged said assets
in the form of bonds and securities of the said Navigation
Company for the purpose of borrowing money to be used
in the furtherance of the interests of said banks and the
personal interests of these defendants, and pledged the
same as security in order to obtain large deposits, the
benefits and profits from which inured directly to said
banking corporations and indirectly to the stockholders
thereof, including these defendant directors.   That said
defendants being directors of both the said Navigation
Company and the said banking corporations, knew, ac-
quiesced in and approved of said unauthorized, unwar-
ranted and unlawful acts.

"That said Southwest National Bank of Commerce and its successor, the said Commerce Trust Company, with the approval, acquiescence and consent of these defendants, members of the board of directors of the said respective companies, realized for said banks and for its stockholders from the use of said assets, approximating three quarters of a million dollars, vast benefits and profits, and that the said Navigation Company, the rightful owner of said bonds, assets and securities, was paid no interest and received no benefit or profit whatever from the illegal and wrongful use of its funds aforesaid, notwithstanding the entire assets of said Navigation Company, the rightful property of this petitioner and other stockholders, was placed in jeopardy and risk without his or their knowledge, consent or approval and without any authority whatever, contrary to law and in violation of the terms of its charter, and that an accounting as herein prayed will be necessary to determine the amount of profits and benefits derived and appropriated to the use of the said banks and to these defendants, and which in equity and right should be returned to the Kansas City Missouri River Navigation Company for the benefit of its respective stockholders *pro rata* as their interests may appear. . . .

"(f) That said defendant officers and directors have failed and neglected to collect unpaid stock subscriptions due this corporation in the sum of $183,501.73; but that they have collected in installments payments on subscribed stock in a sum approximating $100,000 for which no stock has been issued, and that the subscribers of said partially paid subscriptions have received neither interest on their payments nor stock certificates, although the said defendant directors have retained and used the said amount so paid in as corporate funds for a period of fifteen years. That in order to determine all of the rights and interests here involved it will be necessary to determine by decree in equity the status and rights of the owners of said partially paid subscriptions.

"(g)  That said defendant officers and directors during a period of many years have made no attempt to enforce the obligations due this corporation in the form of 'bills receivable' in the sum of $1,854.50, and that because of said failure and neglect some of said claims are now barred by the Statute of Limitations, all to the great loss and damage of this petitioner and other stockholders similarly situated.

"(h)  That said defendant board of directors have failed and neglected to hold elections as provided by law to fill vacancies on its board of directors, or to fill such vacancies by appointment contrary to and in violation of their duties as officers and directors of said corporation. . . .

"(i)  That said defendant board of directors have failed and neglected to hold regular meetings as provided by law, and have failed to keep proper corporate records of the business affairs of said corporation.

"(j)  That said defendant board of directors have been guilty of violation of Section 3349, Revised Statutes of Missouri 1909, and Section 10154, Revised Statutes of Missouri 1919, in that they have failed to keep a record of and failed to send each stockholder of this corporation a full statement of the condition of the affairs of said corporation, together with a list of its stockholders and the numbers of the shares of stock owned by each, as often as once each year, and have further violated said sections by refusing this petitioning stockholder access to  the books and records of the corporation whereby he might obtain such information for himself, until they were required to grant such access and information by order of the Circuit Court of Jackson County, Missouri, through its peremptory writ of mandamus issued at the instance of your petitioner on the fifth day of February, 1925.

"(k)  That said defendant officers and directors notwithstanding they have abandoned their franchise and retired from the business for which said corporation was chartered, have failed to function thereunder

for a period of more than seven years aforesaid, have paid out salaries, maintained offices, incurred great expense in the defraying of obligations for state, county and corporation taxes, during said period,-and are still incurring the same, all to no avail and in dissipation of the assets properly belonging *pro rata* to this petitioner and to other stockholders similarly situated, and that for the period of years above mentioned they have not done or performed one act in furtherance of the purposes of said corporation, and that by reason of said abandonment and non-user of the corporate franchise, said corporation is now subject to ouster under the laws of the State of Missouri authorizing its existence.

"(l)  That said defendant officers and directors -although they are now and have been continuously in control and in charge of the management of said corporation for a period of sixteen years, during the last twelve of which said corporation maintained a capitalization of $1,202,000, have not distributed a dollar in dividends, but on the contrary sustained losses to the extent of seventy-five thousand dollars or one hundred thousand dollars annually during the period of attempted navigation.

"(m)  That said defendant-officers and directors have practiced upon your petitioner, and other stockholders similarly situated, deceit and misrepresentation, in that they represented to your petitioner and to other stockholders that it was the intent, purpose and design of said corporation, acting by and through them, its duly constituted officers and directors, to use the funds realized from the sale of stock to him and other stockholders, in furtherance of the purposes for which said corporation was created and chartered, to-wit: 'to navigate, improve and cause to be improved, the Missouri River, and other inland waterways of the United States; to develop the natural resources of the land and country bordering on and contiguous thereto, and to convey and transport persons and freight on land and water,' but that instead thereof and contrary to said express representa-

tions they have attempted only in a feigned, perfunctory and unsuccessful manner to navigate said streams, and after a short period of time and at the end of a signal failure to so navigate, they abandoned each and all of said other above-proposed projects and are now and have been for a period of more than seven years, inactive, inoperative, defunct and wholly without holdings or property necessary to carry out any of the purposes so proposed and for which said corporation was created, and have without warrant of law, without authorization under their charter and in violation both of the statutes of the State and the Constitution thereof aforesaid, misappropriated and diverted the funds and assets of said corporation, the property of this petitioner and other stockholders, and have used for the period aforesaid and are still using the said funds for purposes foreign to and in no manner connected with or in furtherance of the business contemplated by their charter, and held out to this petitioner and other stockholders as an inducement for the purchase of its corporate stock.

"8. Your petitioner further represents that it will be necessary to ascertain the exact financial status of said corporation, and to ascertain the amounts of money due to each one of the various holders who subscribed to the capital stock of said defendant corporation, and that in order so to do an accounting will be necessary to ascertain the extent of profits or losses gained or suffered by said corporation while engaged in carrying on business. That it will also be necessary to ascertain who are the common stockholders and who are the preferred stockholders, and that said accounting should extend to the determination of the respective interests of common stockholders and preferred stockholders, and to ascertain the amount of subscribed stock fully paid for and the amount of subscribed stock that has not been paid for, and the amount of stock partially paid for; also to determine how much is due the common stockholders, and how much is due the preferred stockholders, and to ascertain how much loss, if any, should be borne by the

common stockholders, and each of them, and how much loss, if any, should be borne by the preferred stockholders and each of them.

"Also to ascertain and determine the amount of interest and profits that may be due from the Commerce Trust Company for its use and control of the corporate securities of said Navigation Company, and others participating in such profits, and the amounts that are just due from the defendant directors, or any of them, for the profits derived by them directly and indirectly from the use of the funds and assets of said Navigation Company as herein set out.

"9. Your petitioner further represents to the court that if said defendant corporation is permitted to drift under its present mismanagement, and if its officers and directors now in charge of its business affairs were permitted to continue their unlawful acts of mismanagement, maladministration, neglect and violation of its charter, great and irreparable loss must of necessity result to your petitioner and other stockholders similarly situated.

"Your petitioner further represents to the court that he has in good faith earnestly and diligently endeavored to obtain relief through corporate action; that he has submitted his claim and complaint to the president of the board of directors of said corporation, and has remonstrated against the act of said board of directors in investing and in keeping invested the capital stock of said corporation in Liberty Bonds instead of distributing the same *pro rata* to the respective shareholders entitled thereto, but to no avail; that he even besought the president of the said board of directors to purchase his stock if the said directors were unwilling to distribute the assets of said corporation invested as aforesaid, but that said offer was likewise denied; your petitioner further states that the defendants now constituting the said board of directors are themselves parties to the abuse of trust, the mismanagement and the *ultra vires* acts above set out and are the identical persons herein charged with

the abuse of trust, mismanagement and *ultra vires* acts as aforesaid; that said defendant corporation is under their complete denomination and control, and that there is no plain, adequate and complete remedy at law for the relief herein sought.

"Wherefore, your petitioner prays the following relief:

"1st. That while this action is pending and while an accounting, as herein prayed, is being taken, that the officers and directors of defendant corporation be suspended from exercising their respective offices, and that this Honorable Court appoint one or more persons to be receiver, or receivers, of said defendant corporation to take charge of the estate, assets, effects and business thereof, and to collect all outstanding debts, claims and demands due and belonging to said corporation. To preserve and protect the assets of said corporation from being dissipated while said accounting is in progress with full power vested in said receiver, or receivers, to prosecute and defend in the name of said corporation, or otherwise, all claims or suits, and to appoint all agents necessary under such receiver, or receivers, and to do all other acts which might be done by such corporation, and which may be necessary and proper, and that the powers of such receiver, or receivers, be continued so long as this Honorable Court shall adjudge necessary to carry out its decree herein making a complete distribution of the assets of said corporation.

"2nd. Your petitioner further prays that an accounting be had hereunder to ascertain the true financial state of said corporation to determine its profits or losses made or sustained; to procure a true statement of the gross receipts of said corporation showing in detail the various amounts and when and from whom the same were received, and likewise a detailed statement of all of its disbursements, showing when, for what and to whom said moneys were disbursed; to ascertain a true and correct list of all of its stockholders and the amount of stock owned and held by each, both common and pre-

ferred; to ascertain the amount of unpaid stock subscriptions and from whom said subscriptions are due and the amounts received and on hand for partially paid subscriptions; to ascertain the amount of all outstanding obligations due said corporation, and from whom said obligations are due, and the respective amounts, due from each debtor; to determine the true amount of its liabilities, if any, and to ascertain such other facts and figures as may be necessary in the opinion of this Honorable Court to adjudge and determine the respective rights and interest of all parties herein.

"3rd. Your petitioner further prays that the status and interest of the subscribers who have paid up only a portion of their subscriptions, aggregating in all approximately $100,000, be determined and their respective rights and interests adjudged.

"4th. Your petitioner further prays that the said defendant directors of the said Navigation Company, and the said Southwest National Bank of Commerce, or its successors, or its officers and agents as may herein be adjudged responsible for the acts herein complained of, as well as the Commerce Trust Company, its officers and agents who may be adjudged responsible for the acts herein complained of, be each proceeded against by the receiver, or receivers, herein sought, for the recovery of all profits and benefits flowing to them directly or indirectly from the wrongful and unauthorized use of the funds and assets of the said Navigation Company as herein complained of.

"5th. Your petitioner further prays for an order defining and decreeing to each stockholder, both of common and preferred stock, the amount that is due such stockholder after deducting the losses, if any, and the expenses, if any, incident and necessary to such accounting and receivership and for such other and further relief in the premises as may be just and equitable."

Was the bill framed for the primary purpose of effecting a dissolution of the corporation, or what is tantamount thereto, a winding up of its affairs and the dis-

tribution of its assets? If so, the circuit court is wholly
without jurisdiction of the action. This because under
the rule firmly adhered to in this State "a court of equity
is without jurisdiction in any extreme case put to dis-
solve a corporation and make distribution of its assets."
[Ashton v. Penfield, 233 Mo. 391, 429; State ex rel. v.
Foster, 225 Mo. 171.] On the other hand, if the bill as
its principal objective seeks redress on behalf of the cor-
poration for the fraud, *ultra vires* acts or negligence of
its officers and directors, amounting to a breach of trust,
then it deals with matters which fall well within the
boundaries of long-established equity jurisdiction.

By selecting certain of the averments of the first
amended bill and rejecting the remainder as surplusage,
and ignoring the prayer for the most part as well, we can
bring out of a mass of verbiage a bill that charges: "That
the officers and directors of the Kansas City Missouri
River Navigation Company retired it from the business
for which it was incorporated, sold its physical properties
and invested the proceeds in United States bonds; that
they then loaned the bonds, without any consideration
therefor moving to the corporate owner and without tak-
ing any security for their return, to another corporation
in which they were directors, and which corporation in
turn pledged the bonds to secure large loans of money to
it whereby it was enabled to, and did, realize great prof-
its; that said officers and directors negligently failed to
collect unpaid stock subscriptions to the amount of $183,-
501.73; and that they likewise neglected to collect bills
receivable in the sum of $1,854.50—with a prayer that
those who profited from the unauthorized use of the bonds
be required to account and that plaintiff have general
relief. But we are not at liberty to so take from the body
of the bill a paragraph here and a sentence there, sep-
arate them from the context and bring them into a new
combination for the purpose of determining the character
of the bill. The same rules which govern the interpreta-
tion and construction of other writings are, generally
speaking, applicable to pleadings. [Milliken v. Commis-

sion Co., 202 Mo. 654.] The bill must therefore be considered as a whole and characterized according to its general scope and tenor.

A reading of the bill as a whole discloses that it was framed with one dominant thought in mind, namely: that the corporation has long since become defunct and for that reason its stockholders are entitled to a distribution of its assets. Note the facts which are marshaled: (1) The officers and directors of the corporation sold all its physical assets in 1918 and invested the proceeds in United States bonds, since which time the corporation has not been engaged in any way, shape or form in carrying out the purposes of its organization; (2) the said officers and directors are, and for a period of seven years have been, using for their personal ends the funds derived from the sale of the corporate property; (3) they have failed and refused to distribute the assets of the corporation *pro rata* to its respective shareholders, "although it has ceased to function under the provisions of its charter, abandoned its franchise, and has ceased to transact any business whatever for a period of more than seven years;" (4) the said officers and directors have failed to collect unpaid balances due the corporation on stock subscriptions; (5) they have during a period of many years made no attempt to enforce the obligations due the corporation; (6) they have failed and neglected to hold elections to fill vacancies on the board of directors; (7) they have failed to hold regular meetings of the Board of Directors; (8) they have failed to keep a record of the corporation's affairs; (9) they have failed to send to the shareholders an annual statement showing the condition of the corporation's business, as required by statute; (10) that by reason of the abandonment and non-user of the corporate franchise the corporation is subject to ouster by the State; and (11) the plaintiff "has endeavored to obtain relief through corporate action; . . . he . . . submitted his claim and complaint to the president of the board of directors . . . and . . . remonstrated against the action of

the said board of directors in keeping invested the capital stock of the said corporation in Liberty Bonds *instead of distributing the same pro rata to the respective shareholders entitled thereto,* but to no avail; . . . he even besought the president of said board of directors to purchase his stock *if the said directors were unwilling to distribute the assets of said corporation,* invested as aforesaid; but . . . said offer was likewise denied.'' As a prerequisite to the granting of the relief which these facts warrant, the bill alleges:

''Your petitioner further represents that it will be necessary to ascertain the exact financial status of said corporation, and to ascertain the amounts of money due to each one of the various holders who subscribed to the capital stock of said defendant corporation, and that in order so to do an accounting will be necessary to ascertain the extent of profits or losses gained or suffered by said corporation while engaged in carrying on business. That it will also be necessary to ascertain who are the common stockholders and who are the preferred stockholders, and that said accounting should extend to the determination of the respective interests of common stockholders and preferred stockholders, and to ascertain the amount of subscribed stock fully paid for and the amount of subscribed stock that has not been paid for, and the amount of stock partially paid for; also to determine how much is due the common stockholders, and how much is due the preferred stockholders, and to ascertain how much loss, if any, should be borne by the common stockholders, and each of them, and how much loss, if any, should be borne by the preferred stockholders and each of them.''

The foregoing excerpt is in accord with the tenor of the bill as a whole. An accounting at the hands of the officers and directors who are alleged to have diverted corporate funds to their own use is asked, not for the benefit of the corporation, but ''for the benefit of its respective stockholders *pro rata* as their interests may appear.'' The matter of unpaid balances on stock sub-

scriptions is dealt with, not with the view of enforcing the payment of such balances to the corporation, but for the purpose of determining the status of the delinquent subscribers as shareholders. The prayer which may be looked to as an aid in determining the nature of the action pleaded or attempted to be pleaded speaks for itself. The premises considered we are clearly of the opinion that the bill has for its primary purpose the taking of an account as between the shareholders of the corporation and a distribution of the assets in accordance therewith, and that all other matters with which it deals are intended to be purely incidental thereto.

The circuit court as a court of equity has no power to wind up the affairs and distribute the assets of a corporation such as the Kansas City Missouri River Navigation Company. Nor is such power conferred upon it by Sections 10169-10171, Revised Statutes 1919. It is therefore wholly without jurisdiction of the subject-matter of the action pending before it. And being without jurisdiction it cannot allow an amendment of the bill because that would in itself be an exercise of jurisdiction. It can in fact do nothing further except strike the cause from its files or dismiss the proceeding for want of jurisdiction. It follows that our provisional rule should be made absolute and a writ issued in conformity therewith. It is so ordered. All concur, except *Otto, J.,* not sitting.