H. H. LAUMEIER AND JOSEPH F. MARTINSEN, for themselves and all others similarly situated, v. SUN-RAY PRODUCTS COMPANY, Appellant.—50 S. W. (2d) 640.

Division One, May 27, 1932.

*Watson, Gage, Ess, Groner & Barnett* for appellant.

544

*Manard & Schwimmer* and *Walter H. Maloney* for respondents.

ATWOOD, J.—This is an appeal from an order of the Circuit Court of Jackson County refusing to revoke its interlocutory order made July 11, 1928, appointing a receiver to take charge of the assets and affairs of appellant Sun-Ray Products Company.

On oral argument here respondents filed motion to dismiss the appeal on the ground that the parties had previously stipulated in this court "that the cause in chief is pending in the trial court and will soon be decided upon the merits, whereon another appeal may shortly arise in this cause involving the same issues; that it would promote the convenience of the parties and the court that in such event said appeals be consolidated for hearing and determination by this court and, therefore, the parties hereto agree to a continuance and re-setting of this cause at the pleasure of the court." It was requested in the stipulation that this appeal be not heard upon the date then set for hearing, but that it "be continued and re-set for a later date at the pleasure and discretion of the court." Attached to respondents' motion to dismiss is a certified copy of an order of the court, entered at its March term, 1931, continuing and making permanent its prior appointment of a temporary receiver. This is obviously not the contingency contemplated in the stipulation and respondents' motion to dismiss is overruled.

H. H. Laumeier, Joseph F. Martinsen and John F. Rugg, purporting to act for themselves and others similarly situated, were the plaintiffs below, but Rugg withdrew as plaintiff before this appeal was taken, and appellant was the only defendant. It appears from plaintiffs' petition, filed June 26, 1928, that they were minority stockholders in defendant company, a Missouri corporation. Appellant challenges the sufficiency of the petition to state a cause of action and for that reason we set forth herewith the wrongs complained of and relief sought as therein pleaded:

"For about two years last past the defendant has wrongfully permitted the Ismert family to monopolize all of its offices, business, books, papers, records, and affairs, and has permitted two members thereof, to-wit: John H. Ismert and Martin E. Ismert, to have sole management and disposition of its funds, property and business. It has permitted them to fail and refuse to account for their official conduct in the management and disposition of the funds, property and business committed to their charge. It has permitted them to appropriate to themselves, without right, and to transfer to others, divers and sundry large sums of money and other property of great value, which have become lost and wasted by violation of their duties and abuse of their powers. The amount of such losses cannot be determined without an accounting.

"Plaintiffs are informed and believe, and on information and belief allege, that the defendant, by reason of such mismanagement, has been drifting rapidly towards insolvency, and is now in such an unliquid condition that its solvency is in immediate peril, but that it yet owns property of the aggregate value of from $200,000 to $300,000 which, under competent and proper management, could be used to rehabilitate it, retrieve its losses and regain its prosperity, but all of which, through abuse and neglect on the part of its present management, is lying idle, going to waste, and deteriorating rapidly in value; that through mismanagement and neglect on the part of its corporate officers insurance on said property has been permitted in large part to lapse and become extinct, and real estate and other taxes have been permitted to become and remain delinquent, whereby the assets of defendant have been put in great jeopardy, and are still in jeopardy, of fire, flood, wind, earthquake, burglary, vandalism, tax suits, tax sales, and divers and sundry other perils.

Plaintiffs are further informed and believe, and on information and belief allege, that the defendant even now threatens and intends to, and will, unless enjoined, encumber its remaining assets with deeds of trusts, mortgages, and other liens, against the interests of its stockholders, and to their great loss and prejudice.

"That because of neglect, inattention, gross ignorance, and gross incompetence on the part of its managing officers, the business of the defendant company has been in large part lost and destroyed, the good will of its business has been ruined, and the officers who retain control of its affairs are now threatening to abandon it and its assets, all to the total loss of its stockholders.

"The most valued, competent, and skilful employees of defendant, who long controlled its destiny and guided its affairs, through the full period of its prosperity, all have been wrongfully and wantonly discharged from its services because of the jealously, pique, wilfulness and wrongheadedness of its officers, so that now there is no one

left capable to properly manage and run the defendant's business, or to protect its assets.

"Much money is due to the defendant company on outstanding accounts. The amounts of its accounts receivable cannot be ascertained without a discovery and accounting, but unless competent and proper action is promptly taken, a large number of its accounts will be barred by limitation, and a large amount of money will be lost to the defendant through lack of diligence and proper management in the collection of its outstandings.

"For many months last past the defendant has wrongfully refused and still refuses to permit the plaintiffs and other stockholders to have access to its books and records. Without such access the plaintiffs are unable to make further specification of the nature or extent of the jeopardy which now threatens the defendant's assets with destruction and loss.

"On January 18, 1928, plaintiff, Laumeier made upon the defendant, at the annual meeting of its stockholders, and again at the meeting of its board of directors, written demand for an accounting of its funds, property and business, and for payment by its officers to the corporation of all sums of money and of the value of all property which they had acquired to themselves or transferred to others, or had lost or wasted by any violation of their duties or abuse of their powers, and for other relief, and that suit be brought to enforce the rights of the stockholders in the premises. On March 9, 1928, said plaintiff offered at a meeting of defendant's board of directors a resolution which recited the fact that the defendant's directors had had no audit of defendant's books, no financial statement of its operations, and no sufficient information showing cost of production or profit and loss for the last fiscal year, to enable them to form a proper judgment as to whether defendant's officers were a liability or an asset, and requesting that the company's accountant be directed to make an annual report to the directors for the fiscal year ending December 31, 1927, setting forth therein the earnings of the company, its fixed charges, its depreciation, its interest on funded debt, the earnings available for dividends, after depreciation, Federal taxes and all other items, the financial condition of the company on December 31, 1927, the comparison of such financial condition with December 31, 1926, the additions to plant and property during the year, the total assets, the balance sheet and income account statements for the year 1927, and such other detailed information as might be necessary and proper to give the directors a full and clear insight into the business and financial condition of the company. The defendant, by its officers and directors, has wrongfully refused to render the accounting requested or any part thereof; or to bring any suit to secure restitution for the company, or to pass any resolution, or to

have made any audit, or to take any other action whatever for the relief of the company.

"The Ismert family owns a majority of the stock of the corporate defendant, and is in control of its board of directors and its officers. Members of said family are themselves liable to the defendant corporation to account for their official conduct in the management and disposition of its funds, property and business. It would be vain and idle to ask the defendant for any further or proper relief, as the defendant cannot take any action without involving the Ismert family and its members, and will not take any action against said family or any members thereof so long as said family continues to control its corporate machinery, and any action that might be taken in its name, while subject to the control of the aforesaid, would not be prosecuted in good faith, but would be in the hands of men who would control both sides of the litigation in the interest and for the benefit of themselves.

"The emergency created by the combination of circumstances hereinabove set forth is such that all of the assets of the defendant will be lost to its stockholders and wasted and frittered away unless this Honorable Court exercises its jurisdiction to prevent the wrongs threatened as above stated, and to secure to the plaintiffs, and others similarly situated, the rights of which they have been wrongfully deprived.

"Wherefore, these plaintiffs, in behalf of themselves, and all other stockholders similarly situated, and in behalf also of all creditors of the defendant, all of whom are invited to join or to intervene herein, and to share in the burdens and in the benefits hereof, respectfully pray this Honorable Court for the following relief:

"(1) To enjoin the defendant temporarily, pending the litigation, and permanently, by final decree, from making any further transfer of any of its funds, property, and business, either to members of the Ismert family or to any other persons whomsoever.

"(2) To enjoin the defendant temporarily, pending the litigation, and permanently, by final decree, from encumbering any of the property or assets of the defendant by means of any deed of trust, mortgage, chattel deed of trust, or any other instrument whatsoever.

"(3) To adjudge and decree that the defendant is an accounting party to the plaintiffs, and to compel it, its officers, agents and servants, to grant such accounting, and to that end to have made an audit of its books, and affairs.

"(4) To appoint one or more receivers to take charge of the business, property and effects of the defendant, and to collect, sue for and recover the debts and demands that may be due and the property that may belong to the defendant, with power in such receiver or receivers to manage and operate the business of the corporation,

and to that end, to mortgage or otherwise encumber its property for the purpose of raising the capital necessary to do business.

''(5) To require the defendant, its officers, agents and employees, to deliver to the receiver or receivers all of its books, records, evidences of debt, and all other property.

''(6) That plaintiff may have all further and proper relief including their costs, and a reasonable fee for their attorneys, such fee to be paid for services in bringing the fund into court, and out of the fund.''

Without pleading further plaintiffs and defendant participated in a hearing had on plaintiffs' request for appointment of a temporary receiver. Considerable testimony was adduced at this hearing which commenced July 6, 1928, and culminated in the aforesaid order of appointment on July 11, 1928. On July 16, 1928, defendant filed a demurrer to plaintiffs' petition alleging that it failed to state facts sufficient to constitute any cause of action, which demurrer was on the same day overruled, and defendant thereupon immediately filed a motion to vacate the court's order appointing the temporary receiver, alleging the following grounds:

''First: Because the petition of plaintiff did not state facts sufficient to constitute a cause of action against the defendant or to give the court jurisdiction to appoint a receiver therein.

''Second: Because the order appointing receiver herein was against the evidence and the weight thereof.

''Third: Because the order appointing receiver herein was against the law and the evidence.

''Fourth: Because the order appointing a receiver herein was improvidently made and entered by the court.''

From the court's order overruling this motion defendant has perfected this appeal.

It appears from the record before us that on the next day after the temporary receiver was appointed there was a conference between counsel for the receiver and counsel for defendant with reference to having such receiver appointed ancillary receiver in Wyandotte County, Kansas, where much of defendant's property was situated, and defendant's attorney suggested that the receiver's attorney go over to said county and talk to another attorney who represented defendant there. A result of this conference was that the original receiver filed application in the district court of said county for appointment as ancillary receiver, defendant filed written waiver of issuance and service of summons and notice of the hearing of said application and consented to the appointment of the original receiver as ancillary receiver, and thereupon such appointment was made. Respondents now say that because of such appearance and consent appellant has waived the right and is estopped to complain of the court's order appointing

550

the temporary receiver. ■ If, as appellant contends, the court was without jurisdiction to make the appointment there is no substance in this contention. As said in 53 Corpus Juris, 52, section 40: "Jurisdiction to appoint a receiver cannot be conferred by consent or stipulation; that the parties in interest have agreed to the appointment does not relieve the court from looking at the question of jurisdiction, and especially from inquiring whether the application for receivership is with the view of obtaining final relief or merely for the purpose of securing a receivership;" etc. The cases cited by respondents in support of their position above stated are not in point.

■ Passing to a consideration of the first ground alleged in defendant's above motion to vacate and here urged by appellant, we find the settled rule in this and other states to be that a court of equity has inherent power to appoint a receiver to take charge of the property and affairs of a corporation only when such appointment is ancillary to and in aid of an action pending for some other purpose, and in which there is a prayer for other and final or ultimate relief which the court has power and jurisdiction to grant. We have recently reviewed authorities so holding in State ex rel. Kopke v. Mulloy, 329 Mo. 1, 43 S. W. (2d) 806, 812. Absent a cause of action stated in the main case there is no main case pending, and the court is without power or jurisdiction to appoint a receiver. [Price v. Bankers Trust Co. (Mo. Sup.), 178 S. W. 745, 749; Cantwell v. Lead Co., 199 Mo. 1, 42, 97 S. W. 167; Pullis v. Pullis Iron Co., 157 Mo. 565, 580, 57 S. W. 1095; State ex rel. v. Ross, 122 Mo. 435, 255 S. W. 947; State ex rel. Calhoun v. Reynolds, 289 Mo. 506, 233 S. W. 483; 53 C. J. 19, 21.]

The principle above discussed is thus stated in 4 Pomeroy's Equity Jurisprudence (4 Ed.), page 3613, section 1539:

"Unless authorized by statute, there is no such thing as an action brought distinctively for the mere appointment of a receiver; to justify the appointment it is essential that some proper final relief in equity be asked for in the bill which will justify the court in proceeding with the case."

Also, Clark on Receivers, page 69, section 45:

"The proposition that a court can appoint a receiver merely to administer or preserve the property when no action asking for some affirmative or negative relief is asked is against all recognized rules and usages of equity and against the fundamental principles of jurisprudence under our form of government. It is the duty of the executive under the English form of government and under our federal and state governments to preserve order and preserve property and not primarily the court's duty."

In Tardy's Smith on Receivers (2 Ed.), section 14, pages 50, 51, it is said that "in order to authorize the appointment of a receiver

it is essential that there shall be at the time of the appointment a suit pending in which relief other than the mere appointment of the receiver is sought. The exceptions to the general rule occur in matters relative to the preservation of the estates of insane persons, infants, and estates of decedents where there does not appear to be any one who has a legal right to deal with the property.''

In Hutchinson et al. v. American Palace-Car Co., 104 Fed. 182, a bill was filed by complainants representing a minority interest in the stock of respondent, and the matter under consideration was an interlocutory application for the appointment of a receiver of the assets of the corporation pending litigation in that suit. The court said (l. c. 185) that even though all the parties in interest had agreed on an application for a receivership the court was not thereby relieved ''from looking at the question of jurisdiction, and especially from inquiring whether the application for the receivership is really with the view of obtaining final relief, or merely for the purpose of securing a receivership for the mere sake of the receivership.'' In that case it was held that the court was without power to appoint a receiver because the bill did not properly point out any suitable final relief, and though it contained a prayer for general relief yet it was so framed that it was impossible for the court to perceive what relief the complainants could properly ask for or what they intended to ask for.

Also, in Zuber v. Micmac Gold Mining Co., 180 Fed. 625, the complainant, a citizen of Maryland, brought a bill against two mining companies, citizens of Maine, alleging fraud and mismanagement on the part of majority stockholders without making them parties to the suit or seeking any relief against them, but asking for the appointment of a receiver together with injunctive and general relief. In denying the appointment and dismissing the bill the court said (l. c. 627): ''A receivership cannot be held by this court to be final relief; and it cannot be made final by the suggestion that the receivers may bring suits, and in that way obtain some ultimate relief. The purpose of a receivership in equity is to be ancillary to, and in aid of, the primary object of the litigation. It cannot be the primary object of the litigation. The final relief sought by the bill cannot be made contingent upon the incidental relief of a receivership.''

The petition filed in the instant case vividly portrays numerous alleged actual and impending ills of defendant corporation, mismanagement and unfaithful conduct of its officers, and wrongs to plaintiffs resulting therefrom, but asks for no final relief. The only relief within the pleading and specifically prayed is that of a receivership and matters incident thereto, and a careful analysis of plaintiffs' petition discloses no allegation that would authorize any final relief to plaintiffs as against defendant even under the general prayer for

relief. The authorities unanimously hold that a court of equity, unless so empowered by statute, is without jurisdiction to appoint a receiver to wind up the affairs of a corporation and dissolve it (State ex rel. Navigation Co. v. Dew, 312 Mo. 300, 319, 279 S. W. 65; Ashton v. Penfield, 233 Mo. 391, 429, 135 S. W. 938; State ex rel. v. Foster, 225 Mo. 171, 199, 125 S. W. 184), and counsel for respondents disavow any such purpose. There are some allegations indicating that plaintiffs might have a cause of action against some of defendants' officers for unfaithful conduct, but, notwithstanding plaintiffs had a right under the statute (Secs. 4959, 4960, 4961, R. S. 1929), or under the general equity powers of the court to make them parties defendant and herein seek final relief on that account, they did not do so, and in their brief counsel for respondents frankly say they do not seek ''any direct relief as against any officer or director, other than an injunction not to interfere with the receiver in his duties.''

In their specific prayer plaintiffs do ask for injunctive relief ''pending the litigation,'' but none of the allegations of the petition disclose any pending litigation in which plaintiffs seek or can obtain any final relief against this defendant. As said in 49 Corpus Juris, page 132, section 140: ''It is, of course, necessary that a declaration, complaint, or petition shall show the existence of a cause of action in favor of plaintiff against defendant, by disclosing the existence of a right in plaintiff and an infringement of that right by defendant, entitling plaintiff to relief as of the time of the filing of the complaint.'' Absent a petition showing the existence of and a clear purpose to enforce such independent right against proper parties defendant, the court is without power to grant the ancillary relief of a receivership.

Counsel for respondents evidently overlook the foregoing jurisdictional requirement because in their brief they freely admit that the appointment of a receiver in this case was not ancillary, and apparently proceed on the assumption that they stated a cause of action against defendant corporation when they filed a petition asking for the appointment of a receiver without stating any cause of action for final relief against the defendant. On this theory they cite 14A Corpus Juris, 964, 965, sections 3187, 3188, and cases from other jurisdictions cited thereunder. These citations hold that a proceeding to appoint a receiver is essentially a proceeding against the corporation, and hence it is a necessary party. They do not hold, however, that in the absence of statutory authority a court of equity has inherent power to appoint a receiver where such appointment is not ancillary to a main proceeding which states a cause of action for final relief against a party defendant. The principle that a cause of action must be thus stated to authorize the appointment of a receiver is recognized in our decisions cited by respondents (Price v. Bankers

Trust Co. (Mo. Sup.), 178 S. W. 745; Cantwell v. Columbia Lead Co., 97 S. W. 179, 199 Mo. 1; Ashton v. Penfield, 233 Mo. 391, 135 S. W. 938; State ex rel. Navigation Co. v. Dew, 312 Mo. 300, 279 S. W. 65), and this case is distinguishable therefrom in that the alleged unfaithful officers were in such cases made parties defendant along with the corporation and plaintiffs' rights to final relief properly alleged and sought. Stockholders cannot maintain a suit in equity against the corporation alone where the matters of complaint are frauds or breaches of duty on the part of its officers, which are in reality wrongs against the defendant corporation. Independently of statutes, receivership is a remedy to be invoked only in aid of the primary relief sought. It cannot of itself constitute such primary relief, and hence the court must have jurisdiction independent of the receivership. [Edwards et al. v. Bay State Gas Co. of Delaware, 91 Fed. 942; Bricton Mfg. Co. v. Close, 280 Fed. 297, 300, 301; Myers v. Occidental Oil Corporation, 288 Fed. 997, 999, 1000, 1001; Dold Packing Co. v. Doermann, 293 Fed. 315, 332; Fornaseri v. Cosmosart Realty & Bldg. Co., 274 Pac. (Cal.) 597, 599; Harden v. Public Service Co., 14 Del. Chan. Rep. 156, 158, 159.]

We have also carefully examined the evidence submitted in this case and find nothing therein to indicate that any final relief could be awarded plaintiffs in harmony with the pleadings. Indeed, the objectives disclosed by the evidence confirm the soundness of the controlling principle above discussed. When dissatisfied minority stockholders seek the aid of a court of equity in lifting the property and control of a corporation from the majority, it is a wholesome jurisdictional requirement that they state a cause of action for final relief against proper parties defendant in the main case. There is abundant authority that a court of equity is without jurisdiction to take over the affairs of a corporation merely for the purpose of administering its internal affairs in conformity with the desires of minority stockholders. [Willson v. Waltham Watch Co., 293 Fed. 811, 814, and cases therein cited.] A contrary rule would invite the commencement and indefinite continuation of receiverships without purpose or effort to secure final relief of any kind.

For the reasons above stated the circuit court's order refusing, on motion of defendant, to revoke its order appointing a receiver is reversed, and the cause is remanded with directions that said motion to revoke be sustained and that further proceedings in the cause be not inconsistent herewith.

All concur.