STATE OF MISSOURI at the relation of C. E. SMITH, MAX H. DOYNE, MARTIN C. BECK and SAMUEL B. MAY, Relators, v. JOHN W. JOYNT, Judge of Division No. Two of the Circuit Court of the City of St. Louis, and PAUL DILLON, Receiver.—127 S. W. (2d) 708.

Court en Banc, May 2, 1939.*

---

*NOTE: Opinion filed at September Term, 1938, April 4, 1939; motion for rehearing filed; motion overruled at May Term, 1939, May 2, 1939.

687

*Taylor, Chasnoff & Willson, James V. Frank* and *Jones, Hocker, Gladney & Grand* for relators.

*Boudreau & Kramer* and *Benj. A. Wood* for respondents.

GANTT, J.—This came to me on reassignment. Original action in prohibition. Respondent, Hon. John W. Joynt, Judge of the Circuit Court of the City of St. Louis, filed motions to strike relators' brief and abstract from the record as in violation of certain rules of this court. We find the brief and abstract to be in substantial compliance with said rules, and the motions are overruled...

Our provisional rule challenged the validity of the judgment and orders entered by respondent judge in the case of Robert M. Boyles v. Max H. Doyne et al., pending in said court. Respondent

Paul Dillon was appointed receiver in said case. Relator C. E. Smith was not a party to the Boyles case. Even so, he is a proper party as relator in this original action. [State ex rel. v. Calhoun, 226 S. W. 329.]

In due course respondent judge made return to our provisional rule. The return did not deny a single allegation of the petition for the rule. The facts alleged in the return are the same as the facts alleged in the petition for the rule. Relators filed no reply to the return. It was unnecessary. The parties agreed on the facts. In this situation respondent judge filed a motion to quash the rule. The motion is in the nature of a motion for judgment on the pleadings. It follows that the admitted facts are alleged in both the petition for our rule and the return filed by respondent judge.

The Boyles case was ruled by respondent judge on plaintiff's motion for judgment on the pleadings. Both the petition for our rule and the return allege all of the pleadings in the circuit court. The defendants in said case are Max H. Doyne, Martin C. Beck, Samuel B. May, Milton H. Kinsey, Ralph H. Saettele and Frank R. Nohl. The last three defendants confessed plaintiff's motion for judgment on the pleadings, and for that reason will be considered plaintiffs in the Boyles case.

The petition in said case alleged that on January 1, 1928, plaintiffs and defendants entered into a partnership to conduct, in the City of St. Louis, a consulting and constructing engineering business under the name of C. E. Smith & Co.; that on October 15, 1935, the partnership was dissolved by the resignation of Boyles, and that a receiver should be appointed and the business liquidated. It will be noted that the petition alleged no facts but merely alleged a conclusion that the business was a partnership.

The motion for judgment on the pleadings admitted all the facts well pleaded in the answer of defendants Doyne, Beck and May. Furthermore, said facts must be considered a part of the petition in determining the question of whether or not the facts show, as a matter of law, that the plaintiffs and defendants were partners in conducting the consulting and constructing engineering business. [State ex rel. v. Allen, 85 S. W. (2d) 455, l. c. 460.] It should be here stated that the plaintiffs contend that the relationship was that of partnership or joint adventure. The defendants contend that the relationship was that of employer and employee.

Thus it appears that the only question for determination is whether or not the petition in the Boyles case stated a cause of action. In other words, did the petition, including the admitted facts in defendants' answer, state a cause of action authorizing a receivership and liquidation of the business as a partnership or joint adventure?

The respondent judge ruled that the plaintiffs and defendants were either partners or joint adventurers, and accordingly entered

judgment. Defendants' motion to vacate and set aside said judgment is pending in said court. The material parts of the answer of defendants Doyne, Beck and May follow:

"Come now Max H. Doyne, Martin C. Beck and Samuel B. May, and for answer to plaintiff's petition filed herein, deny each and every allegation therein contained.

"Further answering these defendants specifically deny that they entered into any association in the nature of a partnership with the plaintiff or with anyone else for the purpose of carrying on, in the City of St. Louis, Missouri, a consulting and constructing engineering business, under the firm name and style of C. E. Smith & Company, or under any other or similiar name, and specifically deny that they now operate and carry on or that they have in the past operated or carried on the business of C. E. Smith & Company as a partnership with plaintiff or with anyone else.

"Further answering, these defendants state that on or about the 20th day of December, 1927, they entered into an agreement with C. E. Smith whereby they agreed to conduct the business then belonging to C. E. Smith, and operated by him under the name of C. E. Smith & Company, to the best of their ability, under the terms and conditions set forth in a letter from C. E. Smith addressed to these defendants and plaintiff and remaining defendants herein and B. F. Thomas, Jr., all of whom were then employees of C. E. Smith, doing business under the name of C. E. Smith & Company, which letter was in words and figures as follows:

" 'December 20, 1927

" 'Messrs:
" 'M. H. Doyne,
" 'S. B. May,
" 'M. C. Beck,
" 'B. F. Thomas, Jr.
" 'R. M. Boyles,
" 'M. M. Kinsey,
" 'F. R. Nohl,
" 'R. L. Saettele,
" 'Employees of C. E. Smith & Company,
" 'St. Louis, Mo.

" 'Gentlemen:

" 'Effective after December 31, 1927, on account of my taking on new business in the east, my consulting engineering business, heretofore conducted by me as an individual, will be conducted for me by M. H. Doyne, S. B. May and M. C. Beck as a Board of Control, with M. H. Doyne as Chairman of the Board and Manager of the business.

" 'After December 31, 1927, the only business in this office in which I will have any share of the financial profits or deficits shall be the design and supervision of construction of the South Approach to the Municipal Bridge.

" 'All other business shall be conducted for the benefit of my employees and assistants as set forth hereafter.

" 'After December 31, 1927, the salaries of all employees in the office working on specific jobs shall be divided between the South Approach on the one hand, and all other business on the other, and the overhead expenses that cannot be directly allocated to either shall be divided in proportion to the payroll on the Southern Approach and the payroll on all other work.

" 'All payments received for work on the South Approach will be credited to me and I will pay all salaries and expenses and a proportionate share of the office overhead expenses chargeable to the Southern Approach.

" 'All revenues and income received from all other work done after December 31, 1927, shall be credited to my employees and assistants; out of said revenues all payrolls and expenses and a proportionate share of overhead expenses chargeable to said work shall be charged to the revenues and income from all work except the Southern Approach.

" 'I will render bills to clients for all work done prior to December 31, 1927, and all revenues for work done prior to that date shall be collected and credited to me.

" 'In order that those associated with me may have the necessary working capital to go ahead, I will advance money to pay all salaries and expenses for a sufficient length of time, to be decided by me, until revenues received from other work than the Southern Approach shall be sufficient to pay all salaries and expenses of such other work. But such advances shall not constitute an obligation to me from my employees beyond the extent to which the obligation may be met and advances returned to me out of the revenues of this business.

" 'Thereafter, before any profits shall be divided among my employees and associates, the revenue and profits on such other work shall be used to pay back to me the amounts advanced in the beginning.

" 'At the end of the year the Board of Control shall decide what amount of profits from such other work shall be distributed among the employees. They shall also decide what share of the profits, if any, shall be devoted to employees not named herein. The remainder of said profits, which said Board shall declare, may be distributed, and shall be divided among the employees named herein as follows:

M. H. Doyne ....................................... 25%
S. B. May ....................................... 17.5%
M. C. Beck ....................................... 15%
R. M. Boyles ....................................... 10%
B. F. Thomas, Jr. ....................................... 10%
M. M. Kinsey ....................................... 7.5%
F. R. Nohl ....................................... 7.5%
R. L. Seattele ....................................... 7.5%

." 'The Board of Control shall have authority to employ and to discharge associates, take on or give up office space, incur or eliminate expenses, and do such other things necessary to the running of the business, just as I would do if I were here, which shall include the fixing of salaries. But unless some unforeseen conditions arise there shall be no increases in salaries during 1928.

" 'M. C. Beck shall be Secretary and Treasurer. All employees shall make out time cards of all work performed and submit expense incurred to him. In conference with M. H. Doyne and such others as may be desirable, bills shall be made up and sent out by the Secretary-Treasurer. He shall receive all checks for services rendered and deposit them as follows:

" 'A—All checks for services on the Southern Approach and for services rendered prior to December 31, 1927, to the account of C. E. Smith;

" 'B—All checks for all other services performed after December 31, 1927, to an account which shall be opened in the name of C. E. Smith & Company.

" 'Because some salaries and none of the office expenses can be paid out of two accounts, all salaries and bills for other expenses for the Southern Approach work and for all other work will be paid in the first instance from my account. When the amounts received from such other work and deposited to the account of C. E. Smith & Company shall be sufficient at any time, the Secretary-Treasurer shall draw checks on the account of C. E. Smith & Company and deposit them to my account to reimburse me for amounts advanced for salaries and expenses chargeable to such other work. In this way the profits on such other work will soon catch up and pay off all amounts advanced by me, and thereafter I will be reimbursed currently from amounts paid out of my account and chargeable to such other work and thereafter the profits on such other work will accumulate in the account of C. E. Smith & Company to be used as working capital and, when the Board shall so declare, to be divided among the employees as provided in this letter, due regard to be given by said Board to keeping on hand after such distribution, a sufficient amount as working capital.

" 'All bills and payrolls shall be submitted to the Manager for his approval and checks drawn in conformity therewith by the Secretary-Treasurer, or such other person as may be designated by the Board.

" 'The Secretary-Treasurer and any other person authorized by the Board to sign checks shall give bond in the amount of $10,000, premium of which shall be paid as an expense of conducting the business.

" 'Shortly after the end of each month the Secretary-Treasurer shall make up a cash statement showing the status of the account for the preceding month and at the end of that month, which shall show

cash on hand in the account of C. E. Smith & Company, accounts receivable, at the beginning of the preceding month, bills rendered during the preceding month, bills collected during the preceding month, accounts payable, and while the Southern Approach work is under way, the distribution between the Southern Approach work of C. E. Smith and the account of all other business.

" 'It is the intention of this arrangement that in case of the death or resignation or discharge of any one of the employees, he shall have no claim on any profits, provided, however, that the Board of Control may, in its discretion, pay to such one part of the amount to be declared as profit at the end of the year.

" 'In consideration of this arrangement it is understood that all engineering business conducted by my employees shall be conducted for the benefit of this business, and it is desired that no one will take on any business; during regular office hours, nor render any bills for business conducted during said hours, nor receive any amounts of money for business conducted during these hours, other than the salary and a share of profits if declared by the Board, but that bills shall be rendered and amounts collected for services so performed in said regular hours for the benefit of C. E. Smith & Company.

" 'It is my intention to turn this business and all equipment, files and records over free to my employees on the termination of the Southern Approach, and that in the meantime it will be conducted for me by the Board of Control, just as I would conduct it, but for my benefit as far as the Southern Approach is concerned; and for the benefit of my employees as far as all other business after December 31, 1927, is concerned.

" 'I will continue to direct and supervise the work incident to the Southern Approach as may be necessary and will gladly give advice and assistance on any other business in hand or that may come in later on, and also to advise on any questions that may be submitted to me by the Board or the Manager.

" 'The turning over of the business will be, necessarily, contingent on the successful continuation of the business as a profitable going concern, because unless you can make more money than your salaries and other expenses there will be nothing to turn over. However, I have no doubt that, based on over twelve years experience and the business established during that time, the business will continue to be sufficiently profitable so that the share of each employee will be very attractive and satisfactory in addition to the salaries.

" 'Based on the experience that will be gained by the Board of Control it is my intention to work out with the Board the method by which the business, equipment, files and records shall be taken over and conducted after the completion of the Southern Approach, who shall participate in the organization taking it over, and on what terms, and who shall constitute the employes of such organization.

" 'M. H. Doyne, S. B. May and M. C. Beck, by signing four copies of this letter agree to act as the Board of Control as provided herein. Mr. M. C. Beck by signing four copies of this letter has agreed to act as Secretary-Treasurer, and to give bond for $10,000 as provided herein.

" 'I take this opportunity to thank all my employees and associates for their hard work and interest in the business and teamwork and cooperation that has made my success possible, and to impress upon all most earnestly the necessity for a continuation of unselfish teamwork and cooperation as your future success will depend more on that than on any other conditions. Remember that if you conduct a successful and profitable business, your salary will be only part of your compensation. Your share in the profits is the goal toward which you should strive.

" 'Yours sincerely,
" ' (Signed) C. E. Smith.

" 'In consideration of the salaries at the rate we are now receiving and a share in the profits as provided herein, we agree to conduct this business to the best of our ability.

" ' (Signed) M. H. Doyne
" ' (Signed) S. B. May
" ' (Signed) M. C. Beck

" 'In consideration of the salary I am now receiving and a share in the profits as provided herein, I agree to act as Secretary-Treasurer and to give bond for $10,000 for faithful performance of the work.

" ' (Signed) M. C. Beck.'

"These defendants state that each of the employees mentioned in said letter agreement of December 20, 1927, received a copy thereof prior to the effective date mentioned therein, and not only agreed orally to be bound by the terms thereof, but accepted the same by their conduct by continuing after December 31, 1927, in the employ of C. E. Smith & Company as conducted by these defendants, and by accepting the benefits of said agreement from time to time as hereinafter set forth, and by otherwise accepting the benefits of said agreement, and by so doing plaintiff, Robert M. Boyles, and defendants M. M. Kinsey, F. R. Nohl and R. L. Saettele became bound to recognize and carry out all of the terms and conditions of said agreement and are now bound thereby to said agreement as the same has been modified with the consent of all of the parties thereto and of the beneficiaries from time to time thereof.

"The defendants further state that after December 31, 1927, the effective date of said agreement, all of said employees of C. E. Smith & Company continued as employees of the business as conducted by these defendants under the terms of said agreement until on or about April 1, 1928, at which date said B. F. Thomas, Jr., resigned as an employee of said business.

"These defendants further state that after said B. F. Thomas, Jr., resigned as an employee, by action of these defendants as the Board of Control mentioned in said agreement, and with the approval of C. E. Smith, and with the knowledge, consent and approval of all of the parties to this cause, the percentages mentioned in said agreement were changed as follows:

| | | |
|---|---|---|
| M. H. Doyne | 25% | to 26.5% |
| S. B. May | 17.5% | to 19% |
| M. C. Beck | 15% | to 16.5% |
| R. M. Boyles | 10% | to 11% |
| M. M. Kinsey | 7.5% | to 9% |
| F. R. Nohl | 7.5% | to 9% |
| R. L. Saettele | 7.5% | to 9% |
| B. F. Thomas, Jr. | 10% | to 0% |

"These defendants further state that thereafter plaintiff and the remaining defendants herein continued as employees of said business and accepted the benefits of said contract, receiving from time to time distributions of profits of said business as determined upon from time to time by these defendants as a Board of Control, all as provided in said contract. . . .

"These defendants further state that pursuant to the powers vested in them under said agreement of December 20, 1927, as modified, and particularly under the provision that 'in case of the death or resignation or discharge of any one of the employes, he shall have no claim on any profits, provided, however, that the Board of Control may, in its discretion, pay to such one part of the amount to be declared as profit at the end of the year,' they determined, subject to the approval of C. E. Smith, that it would be fair and reasonable to reward plaintiff for his past association with C. E. Smith & Company on the following basis: (Here the tender to plaintiff Boyles was set forth, which tender was refused by him).

"These defendants state that the Southern Approach business mentioned in said agreement of December 20, 1927, has been completed and that they have requested C. E. Smith to carry out his intention to turn over the business of C. E. Smith & Company, including all equipment, files and records, as expressed in said agreement, but that C. E. Smith has declined to do so on the ground that said agreement contemplated not only that the Southern Approach business should be completed, but that the accounts of the business in which he had a personal interest should be collected and liquidated, and that such liquidation had not been completed, which is a fact. These defendants further state that whereas in said agreement C. E. Smith expressed his intention, upon completion of the Southern Approach 'to work out with the Board the method by which the business, equipment, files and records shall be taken over and conducted' and 'who shall participate in the organization taking it over, and on what terms,

and who shall constitute' such employees, nevertheless, such intention has not as yet been carried out. . . .

"These defendants further pray that the Court declare that plaintiff has no partnership interest whatever in the assets and business of C. E. Smith & Company, and no interest whatever in said assets and business as such, except the right, at the option of said Board of Control, and upon conditions to be determined by them as said trustees, in their sound discretion, to receive distribution of part of any amount which they are permitted under the terms and conditions of their trust to declare distributable as profits at the end of the year during which his employment terminated.

"And these defendants further pray for such further relief as the Court may deem meet and proper."

■ It is admitted that the Smith letter of December 20, 1927, to his employees is the contract. It did not transfer the business to the employees. On the contrary it provided that, after December 31, 1927, the business and assets would be under the management of a board of control, with directions as specified in the letter. The business was charged with the payment of expenses, including salaries. Any surplus was to be paid to Smith until the money advanced by him for working capital was refunded. The question of the distribution of surplus to those connected with the business was solely under the control and at the discretion of the board of control. Any distribution to those connected with the business was in the nature of a bonus.

Under the contract the plaintiffs had no part in the control and management of the business. If the relationship had been that of partners or joint adventurers, the plaintiffs would have participated in the control and management of the business. The resignation of plaintiff Boyles on October 15, 1935, was an admission by him that he was only an employee.

Plaintiffs did not consider the resignation of B. F. Thomas, Jr., on April 1, 1928, as a dissolution of the partnership. They continued with the business for eight years after said resignation. The idea that the resignation of plaintiff Boyles dissolved a partnership or joint adventure is an afterthought. He was dissatisfied with the bonus tendered to him by the board of control when he resigned, which dissatisfaction terminated in this litigation.

It was stated in the contract that it was the intention of Smith to transfer the business to employees on the completion of the Southern Approach. It will be noted that the contract did not provide that he would do so. It did provide that when the business was transferred to the employees that Smith and the board of control would select the participating employees. Thus it appears that if plaintiff Boyles had not resigned, he had no assurance under the contract that he would be a participating employee on the transfer of the business by

698

Smith. On the completion of the Southern Approach Smith did not transfer the business to employees. The contract provided other obligations. For instance, the accounts of the business in which Smith had a personal interest had not been collected and liquidated.

The relationship of plaintiffs and defendants to the business is that of employees. The petition, including the admitted facts in defendants' answer, did not state facts sufficient to create the relationship of either partners or joint adventurers. Furthermore, under the admitted facts, the petition could not be amended to state a cause of action creating such a relationship.

██ Respondent judge did not brief the merits. He briefed only procedural contentions. In Laumeier v. Sun-Ray Products Co., 330 Mo. 542, 50 S. W. (2d) 640, we ruled as follows: "Absent a cause of action stated in the main case, there is no main case pending, and the court is without power or jurisdiction to appoint a receiver."

Furthermore, the judgment and all orders entered by respondent judge in the case are void and of no force and effect. He proceeded in the cause in excess of his jurisdiction, and our provisional rule should be made absolute. It is so ordered. All concur.