THE STATE EX INF. NORTH TODD GENTRY, Attorney-General, v. RAMONA KENNEL CLUB.—8 S. W. (2d) 1.

Court en Banc, July 3, 1928.

*North T. Gentry,* Attorney-General, for relator.

*Jos. C. McAtee* and *Philip A. Foley* for respondent.

742

WHITE, J.—The Attorney-General filed in this court an information in the nature of a *quo warranto,* seeking to oust the respondent from the exercise of its franchise and corporate privileges and to declare the same forfeited, because of the violation of Section 3536, Revised Statutes 1919, and because of nonuser and misuser of its franchise. To the information filed by the Attorney-General the respondent filed a demurrer, upon which the case is submitted for our consideration.

The information sets out that the respondent was incorporated February 24, 1927, with a capital stock of $125,000, of which $75,000 was paid in cash, and $50,000 paid in property; that the articles of association stated the purpose of the incorporation was:

" 'To own, hold, rent, lease, manage, encumber, improve, exchange, buy and sell real property; to build, erect, construct and alter amusement resorts, halls and other buildings and structures thereon, and to construct roads, drives and walks on said property. To carry on the business of amusement proprietors and promoters for public entertainment; to promote and conduct boxing, wrestling and athletic contests and exhibitions of every kind and description and to license others to conduct and present the same on the premises of this corporation. To establish and maintain suitable grounds and a track for whippet racing, in the County of St. Louis, with necessary buildings, erections and improvements, and to conduct on said grounds and track whippet racing, exhibitions and contests of speed and races of every kind and description, for premiums, purses and other awards made up from fees or otherwise, and to charge the public for admission thereto and to said grounds and track, and to let such rights and privileges to others. To conduct restaurants, cafes and other stands for the sales of food and other refreshments to persons on said premises, and to let the privilege of conducting the same to others, and to do and perform all other acts necessary for fully accomplishing the purposes hereinbefore specifically enumerated. To do all things that may be properly done incidental

to the foregoing purposes and to have all the rights and privileges in this State which accrue to manufacturing and business corporations under the laws of the State of Missouri.' "

The information, filed in October, 1927, avers that the respondent has never conducted any amusement parks other than a race track for dogs; that from the 24th day of February, up to the time of filing the information, respondent had conducted and was conducting the business of book-making, pool-selling, registration of bets, acceptance of bets; that respondent has occupied a certain shed known as a betting ring or shed, and has continuously recorded and registered bets and wagers upon contests of speed or endurance of dogs which took place upon its race track, and had knowingly permitted its betting ring to be used for the purpose of registering and recording bets upon such contests and, for each contest between dogs, persons who. had registered bets thereon appeared at another shed or building on respondent's ground and there received from respondent sums of money paid to them as result of the bets so made and registered; all of which were done in violation of the statutes of Missouri.

The demurrer, under several different paragraphs, recites in substance the statements of the information, and says that the acts stated are not unlawful, because there is no averment that the selling of pools and the registration of bets was on horse races or any trial, skill, speed or power of endurance of man or beast, as contemplated by Sections 3535 and 3536, Revised Statutes 1919.

The demurrer further says that the allegations in relation to the failure to conduct any amusement except the racing of dogs is insufficient, because the respondent was incorporated February 24, 1927, and it had not failed to conduct other amusements for a sufficient time to constitute a non-user of its franchise.

I.   It is not contended that the information does not sufficiently set forth a violation of Section 3535 and Section 3536, provided those sections can be construed to forbid the registering of bets and pool-selling on the result of dog races. It is claimed that the language of the statute "any trial or contest of skill or speed or any endurance of man or *beast*" does not include dog races; that dogs are not "beasts" within the meaning of the statute.

Corpus Juris, vol. 7, page 1019, defines "beast" as any "four-footed animal, as distinguished from birds, reptiles, fishes, and insects." And that is the dictionary definition of "beast."

Respondent cites United States v. Gideon, 1 Minn. 292, where a defendant was indicted for maliciously killing a dog. The defendant was charged under a statute which made it a criminal offense for any

person to "willfully, maliciously kill, maim or disfigure any horse, cattle or other *beasts* of any person."

The natural interpretation of such a statute would be to say that "other beasts" would mean others of general character like those specifically mentioned. The court held that it was the intention to cover only such animals as had money value in a sense that a horse or ox had such value, and that it would not include a dog. The court evidently entertained some doubt about the soundness of that distinction and held there was no proof that the dog killed possessed any value; that the statute could be leveled only at injury to property, and that since a dog without value was not property the dog was not a beast within the meaning of that particular statute.

Appellant also cites Sentell v. New Orleans Railroad, 166 U. S. 698. That case got to the Supreme Court of the United States on the constitutionality of a statute providing that no dog should be entitled to the protection of the law unless placed upon the assessment rolls, and that in a civil action for killing a dog the owner could not recover beyond the value fixed by himself in his last assessment. The law was held constitutional. The court cited many cases calling attention to the general rule that laws for the protection of domestic animals have but a limited application to dogs and cats. In cases considering a dog as a dangerous animal unless kept under restraint, the right to enact a statute permitting them to be killed was based upon the same principle as other acts passed in the exercise of police power authorizing persons to kill diseased cattle, to destroy obscene books, or pictures, or gambling instruments, or to destroy fishing nets.

Missouri has statutes, Section 4351, Section 4352, Revised Statutes 1919, which permit the killing of a dog when he is caught red-fanged in killing sheep. Such a statute might just as well apply to any other vicious animal. It is applied to dogs because dogs are the only domestic animals that are likely to commit such depredations. Nevertheless, in this State at least, ever since the immortal oration of Senator Vest, dogs have been considered as property, and no one has a right to kill a dog except for just cause. [Gerhart v. City of St. Louis, 270 S. W. 680, 1. c. 682; Reed v. Goldneck, 112 Mo. App. 310.] An action will lie for damages for killing a dog; the owner, however, must prove the value of the dog.

Our statute against maiming and wounding or killing domestic animals, Section 3414, Revised Statutes 1919, cannot apply to dogs, because it specifies the particular animals protected by it, and dogs are not among them. The reason for such statutes and the reason for the ruling in the cases cited is that domestic animals which have a particular value for food or service may be protected by statute. It may be noted that Section 3414 is in the article headed, "Offenses

against Property.'' That reason has no application whatever to betting on a race. When men bet on a race of endurance or speed of an animal, it makes no difference, in the transaction, the risk, or the quality of the act, whether the animal has a commercial value or not. The statutes, Sections 3535 and 3536, are in the Article headed ''Miscellaneous Offenses,'' and were intended to prevent the maintenance of pool-selling, and keeping a place where gambling on races may be conducted. The ordinary and usual definition of ''beast'' in cases like that would include dogs. The reason for a limited definition of the words ''beasts'' in the statutes intended for the protection of domestic animals cannot apply at all to racing animals upon whose speed money is wagered.

There is a distinction in principle between a crime committed *against* an animal (as against property), and a crime committed *with* or *by means* of an animal. In the former the pecuniary value of the animal is an important element of the offense; in the latter it is immaterial. This is recognized in the unmentionable crime (Sec. 3512, R. S. 1919; 36 Cyc. 504), where dogs are included with other beasts. No kind of reasoning can point to a difference between a horse and a dog race, so far as the act of gambling is concerned.

II. Further the nonuser set out in the information is sufficient to justify an ouster. In the seven or eight months from the time the respondent was incorporated until this information was filed, with all its capital stock paid up, it was active in the conduct of dog races and showed no inclination or purpose .to perform any of the other functions authorized in its charter. The case of State ex inf. v. Delmar Jockey Club, 200 Mo. 34, is cited by respondent. There the respondent, authorized to conduct a fair in Sedalia, had conducted only horse races, had failed to exercise his franchise for four years and was ousted by the judgment of this court. The court, quoting from another case, said (l. c. 67):

''The acts of misuser or nonuser must be touching matters which are of the essence of the contract between the sovereign and the corporation, and they must be wilful and repeated.''

And further:

''A failure to substantially comply with the express provisions or conditions of the articles and of the general laws, or a wilful misuse or *nonuse* in regard to matters which go to the essence of the contract between the corporation and the State, are acts and omissions which amount to a forfeiture.''

If the respondent in good faith has intended to perform any of the functions which under the charter it was authorized to perform, it could have answered denying the allegations of the petition and setting forth its purposes. Instead of that it contented itself with a

demurrer. The activity of the respondent during the period of its corporate existence, in dog races and nothing else, with no indication whatever of attempting any other kind of activity, is sufficient under the circumstances to justify the inference that there is no intention to perform the respondent's contract with the State.

For the reasons mentioned the writ of ouster is awarded. All concur.