The STATE of Missouri, at the Relation of the CHICAGO CARDINALS FOOTBALL CLUB, INC., d/b/a St. Louis Football Cardinals, an Illinois Corporation, William V. Bidwill, Charles W. Bidwill, Jr., Charles H. Shea, and Arch Wolfe, Relators,

v.

The Honorable James F. NANGLE, Judge of the Circuit Court of the City of St. Louis, State of Missouri, Respondent.

No. 49858.

Supreme Court of Missouri,

En Banc.

July 8, 1963.

Foster, Vogel & Stroh, St. Louis, Hendren & Andrae, Jefferson City, Robert M. Ahern, Thomas D. Nash, Jr., Chicago, Ill., for relators.

Martin A. Rosenberg, St. Louis, Barnabas F. Sears and John E. Dreyer, Chicago, Ill., for respondent.

HYDE, Judge.

This is an original proceeding in prohibition to prevent respondent from exercising jurisdiction in the case of Walter H. S. Wolfner v. The Chicago Cardinals Football Club, Inc., d/b/a The St. Louis Football Cardinals et al. and particularly from interference in the affairs of the cor-

poration through a trustee or receiver appointed by him. On issuance of our preliminary writ we ordered that the trustee designated by respondent restore to the officers and agents of the corporation "all corporate property and assets seized by him" and that "he refrain from further interference with the affairs of the corporation until further order of this court and that the officers and agents of said corporation until further order of this court are authorized to continue to exercise all powers and duties vested in them to the same extent if said Circuit Court judgment of November 19, 1962, had not been entered."

Walter Wolfner was the husband of Violet Bidwill Wolfner, who died January 29, 1962. Wolfner's petition in the Circuit Court, entitled "Petition to Sequester and Preserve Assets, for Injunction, etc." stated facts hereinafter set out. At her death, Mrs. Wolfner owned 82% of the stock of the corporation, defendants Charles W. Bidwill, Jr., and William V. Bidwill each owned 4%, and Joseph Griesedieck, Jr., owned 10%. The corporation is an Illinois corporation doing business exclusively in Missouri, where its principal office is located, operating a National League professional football team. Mrs. Wolfner was a resident of Illinois, as is Wolfner and Charles W. Bidwill, Jr., William V. Bidwill and Joseph Griesedieck, Jr., are residents of Missouri, as are defendants Shea and Wolfe. The other defendants (collateral heirs of Mrs. Bidwill) are residents of Illinois. Defendants Charles W. Bidwill, Jr., and William V. Bidwill were adopted by Mrs. Bidwill and her former husband, Charles W. Bidwill, deceased, by adoption decrees entered in Cook County, Illinois, in 1928 and 1933. Mrs. Wolfner's will, probated in Cook County, Illinois, gave Wolfner a life estate in certain oil wells in Oklahoma, and gave the remainder of her estate to her two sons, Charles and William Bidwill, and appointed them executors to serve without bond. Only Charles qualified because William was not a resi-

dent of Illinois. Wolfner appealed from the admission of the will to probate and that appeal was pending at the time of the trial. The order admitting it has now since been affirmed by the Supreme Court of Illinois. In re Wolfner's Estate, 27 Ill. 2d 221, 188 N.E.2d 712. Wolfner has renounced the will and also filed in the probate court a petition, alleging the adoptions of Charles and William Bidwill were void, seeking to vacate the order declaring them heirs and seeking to be appointed an Administrator to Collect, said to be similar to our administrator pendente lite. The probate court sustained the validity of the adoption but Wolfner appealed and this appeal was pending in the Illinois Appellate Court, First District, at the time of the trial. Charles W. Bidwill, Jr., filed a motion to dismiss Wolfner's renunciation on the ground that he had no interest because, on July 8, 1954, a postnuptial settlement had been entered into by Wolfner and his wife. This was still pending in the probate court as likewise was Wolfner's application for appointment as Administrator to Collect.

From 1951 until Mrs. Wolfner's death, Wolfner was the managing director of the corporation signing all contracts with players and determining its policies, serving without salary since 1956, and bringing about the moving of the team from Chicago to St. Louis in 1960, which has resulted in profitable operations. Charles and William Bidwill have been president and vice presdent, respectively, since 1951, at which time Charles was in college and William in prep school; and they have never had any executive functions and are inexperienced in the operation of a professional football team. Mrs. Wolfner's will was filed for probate February 9, 1962, and after hearing was admitted to probate on May 4th. Wolfner filed his notice of appeal on May 10th but on May 7th Charles Bidwill, Jr., voted the stock belonging to the estate (which was necessary to constitute a quorum) at a special stockholders' meeting at which Wolfner was voted out as a director and his office of managing

director was abolished. The four individual relators herein were elected directors. Previously, soon after the death of Mrs. Wolfner these four had assumed management and control of the corporation, announced they would run the team, employed a new coach, moved to more sumptuous offices and usurped the duties of Wolfner as managing director. The Bidwills also barred Wolfner's entry to Mrs. Wolfner's home in Cook County, Illinois, and her apartment in Miami Beach, Florida. All these acts were alleged to have been pursuant to a conspiracy among them to oust Wolfner from his position as managing director, to deprive him of his lawful share as a surviving spouse and to embarrass, humiliate and discredit him. The petition also announced Wolfner's intent to contest the will if its admission to probate was upheld and stated that at least three years would elapse before such litigation could be concluded. It is claimed that this action is an equitable action in the nature of a bill quia timet. See 2 Story's Equity Jurisprudence (14th Ed.) 525, Chap. 24. Other allegations of Wolfner's petition will be referred to infra.

The Circuit Court found all issues in favor of Wolfner; decreed that the corporation be sequestered by the Court until it be finally judicially determined who is entitled to the stock interest of Mrs. Wolfner therein; ordered that the individual relators as purported officers and directors of the corporation be enjoined from exercising any duties of their offices and from transacting any business of the corporation; and appointed a trustee "with full power to husband, manage, operate and preserve said defendant corporation and its assets, business and affairs and to prevent waste thereof, all under the supervision and direction of this Court until it be finally judicially determined who is the person or persons lawfully entitled" to the stock interest of Mrs. Wolfner.

Relators' petition in prohibition challenges the jurisdiction of the respondent on three grounds: (1) that the petition for the appointment of a receiver or trustee is not ancillary to any main relief sought by the plaintiff in the Circuit Court, but is the primary relief sought; (2) that the plaintiff in the Circuit Court did not have any right to or interest in the corporate relator or its assets sufficient to support his petition for the appointment of a receiver or trustee; and (3) that plaintiff's petition on its face showed that the stock owned by Violet Bidwill Wolfner was in *custodia legis* in the Probate Court of Cook County, Illinois, and therefore the Circuit Court of the City of St. Louis had no jurisdiction to appoint a receiver or trustee for the corporate relator.

■ The prohibition petition alleges the facts about the status and relationship of the parties, ownership of stock in the corporation and the probate proceedings and other litigation pending. Copies of Wolfner's petition in the Circuit Court, other pleadings and the judgment therein and the postnuptial agreement were attached as exhibits. Respondents' return admits the pendency of these proceedings but makes certain affirmative allegations concerning them and their effect to which reference will be made, infra. The return denies allegations of the petition not admitted including allegations that Charles and William Bidwill were adopted, their ownership of corporate stock and the validity of the postnuptial agreement. Relators filed a reply which they say "may be treated by this Court as a motion for judgment on the pleadings so that the case will be at issue." We therefore, disregard any new matter or denials in the reply. (See State ex rel. Pontiac Realty Co. v. Nangle, Mo. Sup., 315 S.W.2d 214, 215, and cases cited.)

Relators contend that the relief sought by Wolfner's petition was only the appointment of a receiver and that respondent had no jurisdiction to do so because appointment of a receiver must be ancillary to an action for some other purpose and there is no such thing as a plain receivership action, citing the following cases that have estab-

lished this rule: State ex rel. Merriam v. Ross, 122 Mo. 435, 25 S.W. 947, 23 L.R.A. 534; Price v. Bankers' Trust Co., 178 S.W. 745 (Mo.Sup.); State ex rel. Calhoun v. Reynolds, 289 Mo. 506, 233 S.W. 483; State ex rel. Kopke v. Mulloy, 329 Mo. 1, 43 S.W.2d 806; State ex rel. Lund & Sager v. Mulloy, 330 Mo. 333, 49 S.W.2d 1; Laumeier v. Sun-Ray Products Co., 330 Mo. 542, 50 S.W.2d 640, 84 A.L.R. 1435; State ex rel. Pettibone v. Mulloy, 330 Mo. 1084, 52 S.W.2d 402; Monticello Building Corp. v. Monticello Investment Co., 330 Mo. 1128, 52 S.W.2d 545; United Cemeteries Co. v. Strother, 342 Mo. 1155, 119 S.W.2d 762. Relator also says "sequestration" is a process and not a form of action, no longer vital in Missouri, so that appointment of a receiver could not be ancillary to sequestration, citing State ex rel. Couplin v. Hostetter, 344 Mo. 770, 129 S.W.2d 1, 3; Roberts v. Stoner, 18 Mo. 481; see also Coughlin v. Ehlert, 39 Mo. 285; Watts v. Watts, 304 Mo. 361, 263 S.W. 421, 422. Relators further say sequestration as a conservatory process is in substance a receivership, citing 79 C.J.S. Sequestration, § 2, p. 1048; High on Receivers, 4th Ed., pp. 8, 578 to 581; State ex rel. Busby v. Cowan, 232 Mo.App. 391, 107 S.W.2d 805, 807. "Sequestration is a process after decree for the enforcing of the decree" and has been practically abolished in most states, including Missouri. 1 Clark on Receivers, 3rd Ed., 81, Sec. 68. It is unnecessary in most cases because of statutory methods of enforcement, execution, etc. Our view is that calling Wolfner's action sequestration of the corporation and ordering it sequestered means nothing more than seeking and ordering a receivership. Here the decisive question is: Did the Circuit Court have jurisdiction to appoint a receiver for the corporation on the facts stated in Wolfner's petition?

It is said, Story, Sec. 1142, that bills quia timet "are in the nature of writs of prevention" by which a party "seeks the aid of a Court of Equity because he fears (quia timet) some future probable injury to his rights or interest, and not because an injury has already occurred." Such bills are used for relief of sureties, cancellation of instruments and removal of cloud from title. (Story, Secs. 948–958.) Where property is involved, injunction and appointment of a receiver are often-used methods of relief. However, it is said, Story, Sec. 1170: "The appointment of a receiver is a provisional remedy and is not to be allowed in the absence of some independent equity growing out of or in some way connected with the action. * * * As a right, there is no such a cause of action as the appointment of a receiver. The appointment is most generally incidental to some other right, the protection of the property pendente lite, or to enforce the judgment of the court." See also 3 Clark on Receivers, 3rd Ed., 1296, Sec. 701.

Respondent cites English cases and cases from some of our states holding the appointment of a receiver to take charge of property of a decedent's estate is proper under certain circumstances even though an administrator has been appointed. Respondent also quotes from The Law of Receivers, Clark, 1918, p. 70: "Formerly the Probate Court of England did not have power to protect property during litigation as to administration and a receiver was appointed by a court of equity simply to protect the property while the suit was pending in the other court, namely the probate, ecclesiastical, or other court. The Probate Act of England (Veret v. Puprez (1868), L.R. 6 Eq. 329; Hitchens v. Birks (1870) L.R. 10 Eq. 471 at 475) and similar acts in most of our states have given probate courts power to protect property during litigation (Hitchens v. Birks, (1870) L.R. 10 Eq. 471 at 475.) Nevertheless the jurisdiction of chancery courts to protect property under such conditions have not been done away with. (Hitchens v. Birks (1870), L.R. 10 Eq. 471 at 475; Parkin v. Seddons (1873), 16 Eq. Cases 34.) When the court of equity so preserves the property it does so because there is no one else to hold the property. The power of the court to protect property

of idiots, lunatics, children and the deceased really dates back to the original power to do so held by the king and transferred to the chancellor, first the king's secretary, and later on a judicial officer of the king." (See also 4 Clark on Receivers, 3rd Ed., Secs. 991–997.)

Respondent further cites and relies on Underground Electric Railways of London, Ltd. v. Owsley, C.C.A. 2nd, 176 F. 26, in which the court appointed a receiver on application of a creditor with a large claim against an estate being administered in the probate court of Cook County, Illinois. Many other claims had been allowed in the probate court and others presented. Decedent owned a valuable residence and art collection in New York in possession of his widow, who also asserted a large claim. The art collection was given no care, taxes of $200,000 were unpaid and a real estate mortgage was being foreclosed for nonpayment of interest. For three years no application for ancillary administration had been made in New York but was pending when this creditor's action was commenced. There was a dissent on the ground of lack of jurisdiction because the state courts had not refused to act. The Court said it had the full jurisdiction of the English Courts of Chancery which included the "power to appoint a receiver of an estate pending the probate of a will in the absence of the appointment of a custodian by the probate court." As to the objection that there was no proceeding in the court to which the appointment of a receiver could be ancillary, the court said: "The appointment of a receiver is not the ultimate end and object of litigation, but is a provisional remedy or auxiliary proceeding. Alderson on Receivers, p. 15, citing State ex rel. Merriam v. Ross, 122 Mo. 435, 25 S.W. 947, 23 L.R.A. 534. Still we think that this merely means that there must be litigation in some court to which the receivership is auxiliary, and does not necessarily require that it should be in the court of equity itself. In all the English and American cases referred to the probate proceedings to which the receiver-

ships were incident were in a court distinct from the court of equity. Bills merely for the preservation of property pending litigation have repeatedly been sustained."

■ Obviously the situation in that case was different than here because there a receiver was appointed to take charge of specific real and personal property of the decedent located within its jurisdiction. Here the asset of the estate involved is stock in a corporation which stock already is within the jurisdiction of the Illinois probate court in the custody of the executor it has appointed and subject to its orders. The attempt here is not to appoint a receiver to preserve a specific asset of the estate located in Missouri but to appoint a receiver to operate the business of an Illinois corporation in which decedent was a stockholder. This must depend on showing grounds for receivership under the law applicable to corporations. Wolfner is neither a creditor nor a stockholder (see 45 Am.Jur. 18, Receivers, Secs. 8 et seq.; 19 C.J.S. Corporations §§ 1461, 1468), pp. 1167, 1174; and although he would very likely become a stockholder if successful in his litigation and there is a distribution of estate stock, all that remains to be determined. Wolfner contends that he is an equitable owner of an interest in the corporation but that also depends on the outcome of his Illinois litigation to have his postnuptial agreement declared void. He also claims Charles and William Bidwill are illegally in control but this too depends upon the result of the Illinois litigation to have their adoption declared void and to remove Charles as executor. So far he is an unsuccessful litigant in all these cases and we know of no authority for holding that hostility of corporate officers to one who has not established his right to any interest in the corporation is enough to give him the right to have a receiver appointed.

■ Furthermore, while Wolfner's petition alleged inexperience of Charles and William Bidwill (but not of other officers) and while it alleged generally mismanage-

ment, incompetency and danger of waste and loss and possible removal of the football team from this state, this is stated only on his belief and not on facts. Instead he specifically states the amounts used for providing new offices and other expenses and the amounts of salaries are unknown to him. Wolfner does not seek liquidation (see Sec. 351.485, RSMo, V.A.M.S.) and he makes no claim of insolvency. (He alleged the corporation had bank accounts in excess of $400,000 and a value of more than $2,000,000.) The emphasis is on fears, not facts. Thus only conclusions of the pleader are presented. See State ex rel. Kopke v. Mulloy, supra, 43 S.W.2d 1. c. 811. Wolfner now claims the trial court could properly disregard the corporate entity and consider the corporate assets to be assets of the estate but we cannot view the allegations of his petition as sufficient to show either his standing to raise this issue or grounds for doing so. His petition did not proceed on that theory nor state any basis for it but instead sought only the appointment of a receiver to conduct its business. Considering his petition as a whole, it is apparent that whether he will ever have any interest in the corporation depends on the outcome of the Illinois litigation and that his statements as to the merits of these cases are conclusions of the pleader. They must be decided in the Illinois courts, not in this receivership case. In 13 Am.Jur. 1156, Corporations, Sec. 1281, it is said: "A bill quia timet cannot be maintained against a corporation having a large number of damage suits commenced against it to place its assets in the hands of a receiver to be by him preserved for the benefit of the persons who may be successful in such suits." See Slover v. Coal Creek Coal Co., 113 Tenn. 421, 82 S.W. 1131, 68 L.R.A. 852; Irwin v. Willis, 202 Ga. 463, 43 S.E.2d 691, 4 A.L.R.2d 1265. Even contract or non-judgment creditors generally are not entitled to a receiver. 1 Clark on Receivers, 283, Sec. 187; United Cemeteries Co. v. Strother, supra, 119 S.W.2d 1. c. 767. Wolfner's claimed interest in the corporation is so uncertain, contingent and speculative

that we must hold his petition shows no purpose except the appointment of a receiver to take charge of the corporation, which is not an actual asset of the estate, and therefore his petition is insufficient to show a case in which the court has jurisdiction to do so.

■ It is true that we have two conflicting decisions on the jurisdiction of the Circuit Court to appoint a receiver to take charge of property of a decedent's estate during a will contest; and both concern the same receivership. In State ex rel. Hampe v. Ittner, 304 Mo. 135, 263 S.W. 158, which respondent cites, we refused prohibition to prevent the Circuit Court from proceeding with the appointment of a receiver for real estate of an estate in probate court during a will contest. However, when this receivership later came to this court on appeal from refusal of motions to vacate and revoke the appointment, in Seibert v. Harden, 319 Mo. 1105, 8 S.W.2d 905, 908, we held: "We did not rule correctly" in the Hampe case. We further held, 8 S.W.2d 1. c. 912: "If the probate court had jurisdiction over the real estate pending the will contest, and we so hold, the circuit court was without jurisdiction to appoint a receiver." This ruling, which we hold was the correct one, was based on the jurisdiction of the probate court conferred by Sec. 34, Art. 6, 1875 Constitution. We said in the Seibert case (8 S.W.2d 1. c. 908) if the statute authorizing appointment of receivers (then Sec. 1449, R.S.1919, now Sec. 515.240, R.S.1959, V.A.M.S.) "authorized the appointment of a receiver under the facts in the instant case, it would be violative of this section of the Constitution", namely Sec. 34, Art. 6.

Present Sec. 16, Art. 5, 1945 Constitution, V.A.M.S., confers the same broad jurisdiction. In the Seibert case (8 S.W.2d 1. c. 910), we quoted with approval from Scott v. Royston, 223 Mo. 568, 123 S.W. 454, the following: "It has been pointedly decided, however, by our Supreme Court that the reason on which equity interposed in

matters of administration in the old days does not obtain with us and that the principle suggested has no application in view of our statutes with respect to administration. It is pointed out that they are so full and complete, abounding with apt and pertinent provisions to administer full, complete and adequate relief at law, and that their provisions are so ample with respect to matters of administration that they amount to an exclusion, in fact, of the chancery jurisdiction asserted, unless there be some fact or facts involved which render the case one where adequate relief at law cannot be had. * * * 'Whatever may have been the chancery practice prior to the adoption of our present system of probate laws, since then we are clearly of the opinion that the circuit courts of the state have no jurisdiction whatever over any matter pertaining to probate business, except in rare instances, as before indicated. The jurisdiction over all such matters is given to the probate courts by the Constitution and laws of this state. Said courts are courts of record and they have exclusive original jurisdiction within their respective counties in all cases arising under the general laws of the state relating to the administration of estates and to all matters pertaining to probate business.' "

Our present Probate Code, Secs. 473.-675–473.691, RSMo, V.A.M.S., implementing the constitutional jurisdiction of probate courts, now provides most comprehensive methods of administration of estates of nonresidents, making the law of this state apply to "the commencement and conduct of an administration * * * as if the decedent had been a resident of this state." (Sec. 473.675 states certain exceptions in favor of the laws of other states.) Our conclusion is that Wolfner's petition fails to show our probate code does not provide a full, complete and adequate remedy for the preservation of any property of this estate that may be located in this state and therefore shows no basis for intervention of equity to appoint a receiver for such property. However, since we hold that Wolf-

ner's petition does not state a case for disregarding the corporate entity of the corporation, and considering its assets as assets of the estate, his petition must be construed as seeking only the appointment of a receiver unconnected with any certain existing right.

Our preliminary rule in prohibition is made absolute.

All concur except HOLMAN, J., not sitting.