Merle **FROST**, Plaintiff-Respondent,

v.

Benny **TAYLOR** and Marshall **Taylor**, Defendants-Appellants.

No. 12847.

Missouri Court of Appeals,
Southern District,
Division One.

March 24, 1983.

---

trial court, sans a jury, awarded plaintiff $1,500 actual damages and no punitive damages. Defendants appealed.[1]

■ As provided by Rule 73.01[2], appellate review of court-tried cases is to be "upon both the law and the evidence as in suits of an equitable nature." This means "that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976). Also, "Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses" because that task rests with the trial court not with the appellate court. Rule 73.01(c)(2); *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694, 695[2] (Mo.App.1981). Moreover when, as here, the trial court sits as trier of the facts, it may believe or disbelieve all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 483[4] (Mo. banc 1980).

On the day in question plaintiff and defendant Marshall owned Ozark County farms which were separated by "Government land." Defendant Benny, then "about" 15 years old (18 at time of trial), owned 30 sheep in conjunction with a school project which he kept on his father's farm where he then lived with his parents. Near 9:15 p.m. defendant Marshall was asleep on the living room couch when defendant Benny heard dogs barking "where my sheep was at." Defendant Benny went onto the front porch then back into the house and "got a shotgun" before again going from the house. This time defendant Benny saw

Peter H. Rea, Branson, for plaintiff-respondent.

Richard T. Martin, Martin & Harned, Gainesville, for defendants-appellants.

TITUS, Judge.

On Armistice Day 1979 plaintiff owned a dog, a 14-month-old white and black spotted Walker bitch named Cindy, when it was shot by defendant Benny Taylor (Benny), the son of defendant Marshall Taylor (Marshall). Plaintiff sued defendants for $2,000 actual and $10,000 punitive damages. The

1. Plaintiff's petition was in two counts, but as the judgment entered on the second count is not a subject of this appeal it is not for our consideration.

2. Statutory and rule references are, respectively, to RSMo 1978 and Missouri Rules of Court, V.A.M.R.

the sheep "coming toward me running away from a pack of dogs and they were going on like they had been run through" and "I went over towards the sheep." Defendant Benny did not see any dogs, "I just heard them" and "fired three shots towards them" as they were running away from the sheep. Although defendant Benny testified he did not know if any of the shots fired hit a dog, his brief on appeal states "there is no doubt that Benny ... shot the dog that [plaintiff] owned." Defendant Marshall did not awaken or go outside the house until after the shooting had been accomplished.

Plaintiff testified that Cindy and five other dogs were near defendant Marshall's house "running coyotes" when he heard "the shot" but did not see who did the shooting. Although he was on a road and could not see the dogs at the time of the shooting, plaintiff without objection testified that his dogs were "not harming no sheep, they was running the coyote."

In part, § 273.030 provides: "If any person shall discover any dog or dogs in the act of ... chasing sheep ..., or shall discover any dog or dogs under such circumstances as to satisfactorily show that such dog or dogs has or have been recently engaged in ... chasing sheep ..., such person is authorized to immediately pursue and kill such dog or dogs; ...." Defendants rely upon this statute to justify defendant Benny's shooting of Cindy.

■ Before the just-noted law may furnish succor to defendants, it must be shown that when Cindy was shot she was either "in the act of ... chasing sheep" or had "recently engaged in ... chasing sheep." Defendant Benny did not see any dog or dogs in the act of chasing sheep or any dog or dogs who had recently engaged in chasing sheep. Rather he heard dogs, saw his sheep running from them "like they had been run through," and fired three shots at the dogs as they were running from the sheep. In Missouri dogs are property and no one has a right to kill or harm them except for just cause. *Gerhart v. City of St. Louis,* 307 Mo. 206, 215, 270 S.W. 680, 682[2] (1925). Moreover, no one has the

right to kill a dog because it is found on his land when threatening no immediate danger to his property. *Reed v. Goldneck,* 112 Mo.App. 310, 312, 86 S.W. 1104, 1105[3] (1905).

■ In the present matter it cannot be said, as asserted by defendants in their first point relied on, that the evidence conclusively established that Cindy and the other dogs were engaged in or had been engaged in chasing sheep when Cindy was shot. Albeit defendant Benny was the only witness to the shooting, plaintiff's testimony and evidence sufficed to justify the trial court's obvious conclusion that the dogs were shot at while in pursuit of a coyote and not because they were chasing sheep. The matter was clearly one for the trial court to decide and we affirm its conclusion in this respect. *Rudicile v. Barr,* 186 Mo.App. 475, 478–479, 172 S.W. 430, 431[3] (1915).

■ Defendant Marshall, the father of defendant Benny, asseverates upon appeal that the court nisi erred in entering judgment against him. This is predicated upon the general common law that the father of a minor, though living with the father, cannot on the mere ground of parental relationship be held liable for any damages caused by the tortious act of the minor [*Murphy v. Loeffler,* 327 Mo. 1244, 1255, 39 S.W.2d 550, 555[2] (1931) ] unless one of the five conditions outlined in *National Dairy Products Corporation v. Freschi,* 393 S.W.2d 48, 54 (Mo.App.1965) be found to exist. 67A C.J.S. Parent and Child § 123 a, pp. 493–494. However, neither counsel for plaintiff nor counsel for defendants have recognized Missouri's Parental Responsibility Act and the trial court did not refer to the statute in rendering a joint judgment against the defendants. Our concern upon appeal is whether the court nisi reached the correct result and not in determining what may have been the reasons guiding it to judgment or whether such reasons were right or wrong. *Umfress v. State,* 512 S.W.2d 178, 179[2] (Mo.App.1974); *State ex rel. Pope v. Lisle,* 469 S.W.2d 841, 842[1] (Mo.App.1971).

The statute to which we refer, § 537.045–1, provides: "The parent . . . of any unemancipated minor, under eighteen years of age, in their care and custody, against whom judgment has been rendered for purposely . . . damaging any property, shall be liable for the payment of that judgment up to an amount not to exceed two thousand dollars, provided that the parent . . . has been joined as a party defendant in the original action."

Many states have parental responsibility laws similar to Missouri and such states, in addition to Missouri, are noted in *Vanthournout v. Burge,* 69 Ill.App.3d 193, 25 Ill. Dec. 685, 387 N.E.2d 341, 343 (1979). As stated in *Vanthournout,* at 343[2], the purpose of the act is to compensate innocent victims of juvenile misconduct which purposely causes damage, and to place upon the parent an obligation to control the minor so as to prevent intentional harm to others. Predicated on § 537.045–1, we hold the trial court did not err as contended by defendant Marshall. 67A C.J.S. Parent and Child § 123 b, pp. 494–496.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.