Stefan J. Glynias, Thomas K. Lammert, St. Louis, for defendant-appellant.

Kurt D. Breeze, Hillsboro, for plaintiff-respondent.

Sharon GREY, Plaintiff-Respondent,

v.

AMERICAN STATES INSURANCE CO., Defendant-Appellant.

No. 50421.

Missouri Court of Appeals, Eastern District, Division Three.

April 29, 1986.

KAROHL, Presiding Judge.

American States Insurance Company (American) appeals a judgment of the Circuit Court of Jefferson County for benefits under a medical insurance policy. The claim was for medical expenses for a tonsillectomy performed on Carrie Grey, the six-year old daughter of the insured plaintiff Sharon Grey (Grey). American alleged that the surgery was not covered by the policy because it was performed to alleviate a nocturnal cough condition which existed prior to insurance coverage. Plaintiff Grey sued American for payment of the cost of

surgery and for American's bad faith vexatious refusal to pay.

In this court-tried case, the circuit court ruled in favor of Grey and ordered American to pay the medical expenses for surgery. The court denied Grey's claim for vexatious refusal to pay. American appeals. Affirmed.

The proper standard of review in court-tried cases is based on Missouri's Rule of Civil Procedure 73.01 as interpreted by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy,* 536 S.W.2d at 32. Deference will be given to the trial court's right to believe part, all or none of the witnesses' testimony. *Frost v. Taylor,* 649 S.W.2d 264, 265 (Mo.App.1983). We view the facts in a light most favorable to the judgment rendered. *MacCurrach v. Anderson,* 678 S.W.2d 459, 463 (Mo.App.1984). In essence, if there is evidence in the record to support the trial court's judgment, the judgment will stand.

On August 25, 1983, Grey applied for medical insurance coverage with American. Sharon Grey was the named insured but coverage was for her six-year old daughter, Carrie Grey. Grey was previously insured by Blue Cross/Blue Shield, but decided to change policies. The American policy went into effect on September 21, 1983.

Grey fully disclosed Carrie's past medical history, surgical treatments, and all the names of her doctors. Particularly, the application disclosed Dr. Thomas Foy, a pediatrician, who had previously treated Carrie for a coughing complaint. Based on this information, American attached a rider to the contract which excluded coverage for any disease or disorder of the eyes or ears. Grey paid the necessary premium payments to American for coverage.

On October 28, 1983, Carrie was examined by Dr. Leach, an ear, throat, and nose specialist, who concluded that Carrie need-

ed a tonsillectomy. The surgery was performed by Dr. Leach on November 1, 1983. Grey filed a claim with American for the expenses of surgery, but American denied coverage. They claim that the surgery was performed to alleviate a pre-existing condition evidenced by a nocturnal cough that had existed since January 1983. American believed that the cough evidenced a pre-existing condition defined in the insurance policy as "an injury or sickness which first appears or makes itself known before the date of coverage."

American appeals the circuit court's judgment, alleging that Grey's claim for policy benefits stems from a tonsillectomy performed to alleviate the nocturnal cough and that this pre-existing condition was clearly excluded from coverage. Based on the record before us, we find that the evidence was sufficient to support the circuit court's judgment and that the admitted coughing condition was not proof that tonsillitis, requiring surgery, preexisted the effective date of the policy. There was evidence that pneumonia caused the coughing.

Dr. Leach testified that Carrie also suffered from recurrent inflammation of the tonsils. Additionally, Dr. Leach's critical testimony was that he did not see Carrie, and the decision to perform the tonsillectomy was not made until October 28, 1983. Though the child had recurrent bouts with tonsillitis, these conditions did not require a tonsillectomy at any time before October 28, 1983. Dr. Leach stressed that enlarged tonsils are not abnormal for a child Carrie's age and that the size of the tonsils frequently fluctuates during this age. Further, this problem and other symptoms, such as the nocturnal cough, do not justify a tonsillectomy. Rather, these combined problems must reach a point where they are so troublesome to the patient that a tonsillectomy is necessary. The condition can subside on its own with the result that no surgery is ever required. In Dr. Leach's opinion, Carrie Grey's tonsil condi-

tion did not require corrective surgery until a decision was made on October 28, 1983, almost a month after the policy had gone into effect. Dr. Leach's testimony on this issue was as follows:

Q. And the point is, you made that election at that time [October 1983] based on what you found at the time you saw her.

A. Yes. Yes. Yes.

Q. A—Another child with the same condition you could have made an election not to treat in the same fashion.

A. Not to. Exactly. Yes. Had there been no cough, no signs of obstruction, if the child's tonsils were not unduly enlarged, we may have put that case off. But in this case I felt that it would—the situation had arisen whereby irrespective of what had happened earlier, *the child had had pneumonia and that presumably was the cause of the cough, that was there, it was evidenced in the record, but the—the pneumonia had cleared,* there was no good signs of allergy and the tonsils and adenoids were large and she was having trouble with them at that time.

Q. And the presence of the condition requiring a tonsillectomy was a decision that you made on October the 28th, 1983.

A. Yes. At that time and not before.

Q. You indicated that there—every child in the county would be, have their tonsils and adenoids removed if it was done routinely.

A. Exactly, for slight symptoms.

Q. Children you routinely see have had recurrent tonsil problems and don't have their tonsils removed; is that right?

A. Yes. (emphasis ours)

Based on this testimony, we find substantial evidence to support the trial court's judgment in favor of the plaintiff.

We affirm.

SIMON and GARY M. GAERTNER, JJ., concur.